**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RONNIE ENLOW,

      Plaintiff-Appellant,

v.

PATRICK MOORE,

      Defendant-Appellee.

No. 96-5252

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CV-1047-K)

---

John M. Young, Sapulpa, Oklahoma, for Plaintiff-Appellant.

David A. Mullon Jr. (Jessie Huff Durham with him on the brief), Okmulgee, Oklahoma, for Defendant-Appellee.

---

Before BALDOCK and HOLLOWAY, Circuit Judges, and BROWN, District Judge.[*]

---

BALDOCK, Circuit Judge.

      Plaintiff Ronnie Enlow appeals an order of the district court dismissing his petition

for a writ of prohibition without prejudice for failure to exhaust tribal remedies. Our

---

      [*]      The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

jurisdiction arises under 28 U.S.C. § 1291. We review a dismissal for failure to exhaust only for an abuse of discretion. Texaco, Inc. v. Zah, 5 F.3d 1374, 1376 (10th Cir. 1993). The proper scope of the tribal exhaustion rule, however, is a matter of law which we review de novo. Id. Thus, if the district court exceeded the scope of the rule, then the district court necessarily abused its discretion in dismissing for failure to exhaust. Applying these standards, we reverse.

I.

Enlow, a non-Indian, owns a tract of land in Creek County, Oklahoma. Enlow's land adjoins allotments of Indian land restricted against alienation and owned by three members of the Muscogee (Creek) Nation. A boundary dispute arose and the owners of the restricted allotments filed a quiet title action against Enlow in the Muscogee (Creek) Nation Tribal Court (hereinafter "tribal court"). Defendant Patrick Moore, a Muscogee (Creek) Nation district judge, presided over the tribal court case. The complaint in tribal court alleged that Enlow removed the boundary fence separating his property and the Indian land and erected a new fence that encroached upon the restricted allotments.

In the tribal court, Enlow filed a motion to dismiss the complaint arguing that the tribal court lacked jurisdiction over the action. The tribal court denied the motion. Enlow then filed an interlocutory appeal to the Supreme Court of the Muscogee (Creek) Nation, which affirmed the tribal court's decision. In the interim, Enlow filed his own quiet title action in the District Court of Creek County, Oklahoma (hereinafter "state court").

2

During the pendency of the state court action, Enlow filed the instant federal action, seeking an injunction prohibiting the tribal court judge, Patrick Moore, from assuming jurisdiction over the case in tribal court, and directing the quiet title action to proceed in state court.[1]  In his federal action Enlow moved for summary judgment arguing that the tribal court's jurisdiction is limited to disputes involving Indian country.[2]  Enlow asserted that the disputed strip of boundary land was not Indian country and therefore the quiet title action did not fall within the jurisdiction of the tribal courts.  Defendant Patrick Moore filed a motion to dismiss arguing that Enlow had failed to exhaust his tribal remedies.  The federal district court dismissed the case, concluding that tribal remedies had not been exhausted because the tribal court had yet to decide the merits of the case, including the location of the disputed boundary line.

---

[1] The state court has held its proceedings in abeyance pending disposition of this case in federal court.  We note that Oklahoma law provides that the judgment of a tribal court will be granted full faith and credit by the Oklahoma courts if the tribal court grants reciprocity to state court judgments.  See Barrett v. Barrett, 878 P.2d 1051, 1054 (Okla. 1994).  Neither party disputes that the Muscogee (Creek) Nation grants such reciprocity.

[2] "Indian country" is defined as areas "'validly set apart for the use of the Indians as such, under the superintendence of the Government.'"  Oklahoma Tax Comm'n v. Potawatomi Indian Tribe, 498 U.S. 505, 511 (1991) (quoting United States v. John, 437 U.S. 634, 649 (1978)).  See also 18 U.S.C. § 1151 which defines "Indian country" for civil as well as criminal jurisdiction.  Pittsburg & Midway Coal Mining Co. v. Watchman, 52 F.3d 1531, 1541 (10th Cir. 1995).  Restricted allotments of Indian land constitute "Indian country."  Mustang Production Co. v. Harrison, 94 F.3d 1382, 1385 (10th Cir. 1996), cert. denied, 117 S.Ct. 1288 (1997), (citing DeCoteau v. District County Court, 420 U.S. 425, 446 (1975)).

II.

In this case, the narrow issue before the federal district court was whether the tribal court could properly exercise subject matter jurisdiction over a civil action involving a non-Indian property owner.[3]  Under 28 U.S.C. § 1331, the federal district court has the authority to determine whether a tribal court has exceeded its jurisdiction.  Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 857 (1985).  However, the federal district court declined to make this determination, and, instead, dismissed the petition on exhaustion grounds.  The federal district court concluded that Enlow's tribal court remedies regarding subject matter jurisdiction had not yet been exhausted because the tribal trial court had yet to develop a factual record regarding the location of the disputed boundary line.  We conclude that the district court erred in doing so.

The tribal exhaustion rule is the result of Congress' "strong interest in promoting tribal sovereignty, including the development of tribal courts."  Smith v. Moffett, 947 F.2d 442, 444 (10th Cir. 1991).  The rule provides that federal courts must abstain from exercising jurisdiction until tribal remedies have been exhausted unless the "'assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile."  Nat'l Farmers, 471 U.S. at 856 n.21 (citations omitted).  The abstention

---

[3]As the federal district court correctly recognized, the merits of the underlying quiet title action were not before it.

doctrine applies to cases such as this where the tribal court's jurisdiction is at issue. Id. at 857.

Although we agree with the federal district court that the determination of whether tribal courts have subject matter jurisdiction over non-Indians in civil cases "should be conducted in the first instance in the Tribal Court itself," Nat'l Farmers, 471 U.S. at 856, the record before us makes clear that the highest court of the Muscogee (Creek) Nation did in fact make such a determination. The Supreme Court of the Muscogee (Creek) Nation held that the tribal court had jurisdiction over the boundary dispute. Specifically, the court held that the "property in question is located within the boundaries of the Muscogee (Creek) Nation and that the property is Indian Country and that the [tribal] District Court does have jurisdiction over the parties . . . ." Based on the preceding language, we conclude that the highest tribal court had the "opportunity to review the determinations of the lower tribal court," thus exhausting Enlow's tribal court remedies. See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 17 (1987); see also Bank of Oklahoma v. Muscogee (Creek) Nation, 972 F.2d 1166, 1169 (10th Cir. 1992) (holding that tribal court remedies are deemed exhausted upon appellate review within the tribal court system).

As the district court correctly recognized, the location of the disputed boundary line goes not only to the merits of the quiet title action but also to the jurisdictional issue. This is so because tribal authority over non-Indians is limited. Strate v. A-1 Contractors,

5

117 S.Ct. 1404, 1409 (1997).   Indian tribes retain only those "aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status."   United States v. Wheeler, 435 U.S. 313, 323 (1978).   In general, the "sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." Montana v. United States, 450 U.S. at 544, 565 (1981).   Indian tribes do, however, "retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations."   Id. (emphasis added).   This authority over non-Indians "on reservation lands is an important part of tribal sovereignty."   LaPlante, 480 U.S. at 18. Thus, civil jurisdiction over non-Indians on reservation lands "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." Id.

As these cases make clear, in civil disputes involving a non-Indian and Indian land, where no treaty provision or federal statute divests the tribal court of  jurisdiction, the tribal court may properly exercise jurisdiction.   See LaPlante, 480 U.S. at 18. Therefore, in the present case, both tribal court jurisdiction and the merits of the quiet title action turn on the location of the disputed land.   The tribal supreme court unequivocally held that the disputed property was Indian land.   Therefore, the highest court of the Muscogee (Creek) Nation not only determined that jurisdiction in the tribal court was proper but also, in effect, determined the merits of the case by holding that the disputed property was Indian land.   Nonetheless, the federal district court apparently surmised that

6

the tribal supreme court did not actually mean what it said because the tribal trial court had yet to hear the merits of the case and no factual record had been developed regarding the location of the disputed property. Although we recognize that the lack of a factual record regarding the tribal supreme court's finding that the disputed property is within Indian country makes review by the district court difficult, we cannot ignore the clear language of the tribal supreme court's opinion.[4] Furthermore, assuming, as we must, that the tribal trial court is bound by the opinion of the tribal supreme court, the supreme court's holding that the disputed land is within Indian country decides the merits of the case as well. Therefore, the district court had no reason to refrain from reviewing the tribal court's jurisdiction.

Therefore, we conclude that the district court abused its discretion by dismissing this case for failure to exhaust tribal court remedies. On remand the federal district court must determine whether the tribal supreme court's finding that the disputed property lies

---

[4] We note that the district court's jurisdictional inquiry may permissibly involve matters that are also relevant to the merits of the case, such as the location of the disputed boundary line. See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (resolution of jurisdictional questions may be intertwined with the merits of the case).

within Indian country is clearly erroneous.[5]  See Mustang Production Co. v. Harrison, 94

F.3d 1382, 1384 (10th Cir. 1996) (holding that district court reviews tribal court's

findings of facts for clear error and conclusions of law de novo).

Accordingly, we reverse the district court's order and remand the case to the

district court for the limited purpose of determining whether the tribal court exceeded the

lawful limits of its jurisdiction.

REVERSED and REMANDED.

---

[5] In Montana, the Court also recognized that a tribe's civil authority over the conduct of non-Indians may extend to non-Indian fee lands within the reservation if the conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566.  The term "non-Indian fee lands" refers to land within the reservation acquired in fee simple by non-Indian owners. Strate, 117 S.Ct. at 1409.  From the limited record before us, it is unclear whether the disputed property falls within the definition of non-Indian fee lands.  Thus, we leave it to the district court to make such a determination, if necessary.