**PETROGULF CORPORATION,**
**Plaintiff,**

v.

**ARCO OIL & GAS COMPANY,**
**and Vastar Resources,**
**Inc., Defendants.**

**No. CIV.A. 00–B–34.**

United States District Court,
D. Colorado.

April 5, 2000.

Keith D. Tooley, Brian S. Tooley, Welborn,, Sullivan, Meck & Tooley, P.C., Denver, CO, for Plaintiff.

Peter A. Bjork, John P. Baker, David Little, Bjork, Linkley, Danielson & Baker, P.C., Denver, CO, Thomas P. Dugan, Dugan & Rasure, P.C., Durango, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss plaintiff's Complaint for failure to exhaust tribal court remedies. The motion is adequately briefed and oral argument will not materially aid its resolution. For the reasons set forth below, I construe defendants' motion to dismiss as one for dismissal without prejudice, and grant the motion. Jurisdiction is asserted under 28 U.S.C. § 1332.

I.

The following facts are undisputed unless otherwise noted. Under oil and gas leases entered into with private fee mineral owners, Plaintiff owns and operates over 90% of the working interests covering a gas formation, known as the Fruitland Formation, in the western half of Section 21, Township 33 North, Range 10 West, N.M.P.M., La Plata County, Colorado. The Fruitland Formation extends under at least part of the eastern half of Section 21. Part of the eastern half of Section 21 is held in trust by the United States Government (Indian trust land) for the Southern Ute Indian Tribe (Tribe).

On November 4, 1953, the Tribe leased its part of the eastern half of Section 21 to Defendant ARCO Oil & Gas Company (ARCO) in return for a percentage royalty of the minerals extracted. *See Defendants' Motion to Dismiss* at Ex.C. In April 1990, Defendant ARCO sought an exception to a rule established by the Colorado Oil and Gas Conservation Commission (COGCC) in order number 112–61 that wells be drilled no closer than 990 feet to any outer boundary of drilling units. In its application for the exception, Defendant ARCO claimed that topographic features required it to drill closer than 990 feet to the western boundary of the Tribe's part of the eastern half of Section 21. Plaintiff also claims that Defendant ARCO falsely represented in its application that it held the leasehold to the part of the western half of Section 21 toward which the exception if granted would encroach. In reality, the exception ultimately granted by the COGCC encroached toward Plaintiff's leasehold. After the COGCC granted the exception, Defendant ARCO completed drilling the well in August 1990. In 1994, Defendant ARCO created Defendant Vastar to administer Defendant ARCO's domestic oil and gas production and exploration operations. To date, the Tribe has received $402,000 in royalties from Defendants for mineral extraction from the well, and anticipates future revenue of $500,000.

On January 1, 1991, the Tribe agreed to communitize and pool its mineral interests in its part of the eastern half of Section 21 with other mineral interest holders in order to exploit "communitized substances." The Communitization Agreement is "subject to all applicable Federal and State laws or executive orders, rules and regulations," *Defendants' Motion to Dismiss,* Ex. A, at Ex. A to Communitization Agreement, and designates Defendant ARCO as the "[o]perator of the Communitized Area." *Id.* at para. 9. On August 22, 1991, the Tribe also entered into a Memorandum of Understanding with the Bureaus of Indian Affairs and Land Management (MOU) that "the Tribe is entitled to monitor and participate in the spacing, pooling and field rule requests that come before the Colorado Oil and Gas Conservation Commission." *Plaintiff's Sur-reply,* Ex.1, at 1.

On December 10, 1999, without first seeking relief in tribal court, Plaintiff filed this action in Colorado state court. Defendants removed the case here on January 7, 2000. On February 17, 2000, Plaintiff filed an amended complaint that includes claims for (1) "Continuing Geologic Trespass;" (2) conversion; (3) civil theft; (4) misrepresentation and concealment; (5) negligence; and (6) unjust enrichment. The thrust of all of Plaintiff's claims except the fourth is that Defendants have extracted resources from Plaintiff's leasehold interest. The fourth claim alleges that Defendants made misrepresentations in their application to the COGCC for the exception to the drilling rule, which in turn facilitated Defendants' extraction of resources from Plaintiff's leasehold interest.

## II.

■ The Supreme Court created the tribal exhaustion rule because of Congress's "strong interest in promoting tribal sovereignty, including the development of tribal courts." *Smith v. Moffett,* 947 F.2d 442, 444 (10th Cir.1991). The rule provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies." *Tillett v. Lujan,* 931 F.2d 636, 640 (10th Cir.1991). The rule applies to cases in which the tribal court's jurisdiction is at issue. *See National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 855–56, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). It does not require the existence of a pending action in the tribal forum. *See Moffett,* 947 F.2d at 444; *see also, e.g., Brown v. Washoe Housing Auth.,* 835 F.2d 1327 (10th Cir.1988).

■ There are three exceptions to the tribal exhaustion rule. First, the rule does not apply where an assertion of tribal court jurisdiction is motivated by harassment or made in bad faith. *See National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447. Second, the tribal court exhaustion rule is inapplicable when the tribal court action violates express jurisdictional prohibitions. *Id.* Third, the rule does not come into play if tribal court exhaustion would be futile due to an inadequate opportunity to challenge the tribal court's jurisdiction. *Id.*

If none of these three exceptions prohibits application of the tribal exhaustion rule, then I must analyze whether I should apply the rule "based on comity concerns for Indian tribes in maintaining their remaining sovereignty." *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1507 (10th Cir. 1997). Three specific "comity concerns" are advanced by proper application of the rule: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Id.* (citing *National Farmers,* 471 U.S. at 856–57, 105 S.Ct. 2447). "When the dispute at issue arises on the reservation," these comity concerns "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum."

*Zah,* 5 F.3d at 1378; *see also Kerr–McGee,* 115 F.3d at 1507 ("[T]his court at times abstains without making a detailed comity analysis, holding that 'when the dispute is a "reservation affair" there is no discretion not to defer.' ") (citations omitted). Disputes involving non-Indian activity occurring outside the reservation do not as clearly implicate comity concerns. *See id.* Accordingly, in such circumstances, I must "assiduously" examine the *National Farmers* factors to determine whether comity concerns favor application of the tribal exhaustion rule. *Kerr–McGee,* 115 F.3d at 1507 (citing *Zah,* 5 F.3d at 1378).

### III.

#### A.

Because tribal exhaustion is a matter of comity, and not a jurisdictional prerequisite, *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), dismissal under Rule 12(b)(1) is inappropriate. Further, Rule 12(b)(6) is not the proper vehicle through which to address the tribal exhaustion rule because dismissal pursuant to that rule is with prejudice, and the Tenth Circuit has held that "[a] federal action may be abated or dismissed *without prejudice* to enable pursuit of tribal court remedies." *U.S. v. Chuska Development Corp.,* 55 F.3d 1491, 1492 (10th Cir.1995) (citing *National Farmers,* 471 U.S. at 857, 105 S.Ct. 2447) (emphasis added). Nevertheless, because the basis of Defendants' motion is the tribal exhaustion rule, I construe the motion as one for dismissal without prejudice on the ground of abstention, and proceed to address its merits.

#### B.

■ Defendants argue that because the well sits on, and extracts resources from, Indian trust land, the Tribe has jurisdiction over this dispute and Plaintiff must first avail itself of the tribal court before it can bring this action in state or federal court. Plaintiff responds that neither party is a member of the Tribe, and the dispute in this case does not fall under either of the exceptions identified in *Montana v. U.S.,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) to the general rule that "absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation." *Strate v. A–1 Contractors,* 520 U.S. 438, 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). Plaintiff further argues in effect that *National Farmers'* first and second exceptions to the general exhaustion rule apply. Plaintiff thus concludes that the motion to dismiss must be denied. I disagree.

I conclude this case "arises on the reservation." *Zah,* 5 F.3d at 1378. Although Plaintiff alleges that Defendants' actions have had effects on its property rights outside of the reservation, Defendants' actions initiate the dispute *on* the reservation. The comity concerns identified in *Kerr–McGee* thus "dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Zah,* 5 F.3d at 1378. Consequently, I have " 'no discretion not to defer' " to the tribal court. *Kerr–McGee,* 115 F.3d at 1507 (citations omitted).

That both parties to this lawsuit are not Indians does not change this result. *Kerr–McGee* can be read to require at least one of the parties to a dispute to be an Indian to trigger the tribal exhaustion rule. *See Kerr–McGee,* 115 F.3d at 1507 (citing a citation in *Zah,* 5 F.3d at 1378 to a Ninth Circuit opinion for the proposition that an "accident on the reservation *involving Tribal members* 'arises on the reservation' within meaning of *National Farmers* presumptive tribal jurisdiction") (emphasis added). However, application of such a rule in this case would hardly serve the interests of comity. Defendants, as the operators of the Communitization Agreement and the well, represent the interests of the Tribe insofar as the outcome of this dispute will affect the Tribe's property rights. If sovereignty means anything, it must include the power to determine the extent of rights in property

over which a governmental entity claims jurisdiction. *See Rhode Island v. Massachusetts,* 37 U.S. 657, 733, 12 Pet. 657, 9 L.Ed. 1233 (1838) ("Title, jurisdiction, sovereignty, are, therefore, dependent questions, necessarily settled, when the boundary is ascertained, which, being the line of territory, is the line of power over it."); *Enlow v. Moore,* 134 F.3d 993, 996 (10th Cir.1998) ("the location of the disputed boundary line goes not only to the merits of the quiet title action but also to the jurisdictional issue"). *See also Rosenthal & Rosenthal, Inc. v. New York State Urban Development Corp.,* 771 F.2d 44, 45 (2d Cir.1985) ("The power of eminent domain is a fundamental and necessary attribute of sovereignty").

In a similar case, albeit one addressing the jurisdiction of tribal courts and not the tribal exhaustion rule, the Tenth Circuit held that "in [boundary] disputes involving a non-Indian and Indian land, where no treaty provision or federal statute divests the tribal court of jurisdiction, the tribal court may properly exercise jurisdiction." *Enlow,* 134 F.3d at 996 (citing *LaPlante,* 480 U.S. at 18, 107 S.Ct. 971). *Enlow* teaches that the comity concerns identified in *National Farmers* counsel against a federal court addressing boundary disputes involving Indian land before a tribal court has had an opportunity to do so. Mere absence of an Indian party to this case, then, does not alter the fact that it involves the determination of the extent of tribal rights to reservation land. *See U.S. v. Tsosie,* 92 F.3d 1037, 1043 (10th Cir. 1996) ("The United States' decision to bring this suit on behalf of [an Indian Plaintiff] does not alter the fact that this is essentially a dispute between Indians over certain rights to land in Indian country."); *Navajo Nation v. Intermountain Steel Buildings, Inc.,* 42 F.Supp.2d 1222 (D.N.M.1999) (participation of insurer of Indian tribe in case "d[id] not change the essential nature of the dispute"). For this reason, I will not ignore the tribal exhaustion rule merely because Plaintiff chose not to include the Tribe in this action.

The Supreme Court's elaboration of *National Farmers'* first exception in *Strate* also does not apply here. *See Strate,* 520 U.S. at 459 n. 14, 117 S.Ct. 1404. In *Strate,* the parties had adjudicated tribal jurisdiction over the dispute in the tribal court before seeking a declaratory judgment in federal court that the tribal court lacked jurisdiction. *Strate* did not address the exhaustion requirement. Rather, *Strate* looked to the scope of tribal court jurisdiction after a decision on that question had been rendered by the tribal court. *See Kerr–McGee,* 115 F.3d at 1506 (*Strate* "is not a tribal exhaustion case"). Nevertheless, in the last footnote of its decision, the Supreme Court stated that:

[w]hen ... it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes.... Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement ... must give way, for it would serve no purpose other than delay.

*Strate,* 520 U.S. at 459 n. 14, 117 S.Ct. 1404 (citations omitted). As explained in *Strate,* *Montana*'s main rule applies to "conduct of nonmembers on non-Indian [fee] land within a reservation." *Id.* at 446, 117 S.Ct. 1404. "The term 'non-Indian fee lands,' as used ... throughout the *Montana* opinion, refers to reservation land acquired in fee simple by non-Indian owners." *Id.*

Here, because Plaintiff does not contend that Defendants acquired the property upon which the well sits in fee simple, the *Strate* exception does not apply. Nor does *National Farmers'* more general first exception apply here because I cannot say that it is so clear that the tribal court lacks

civil jurisdiction that applying the tribal exhaustion rule would clearly lead only to delay in the prosecution of the case in the proper forum. For these reasons, I will not apply either *National Farmers'* first exception to the tribal exhaustion rule, or *Strate's* elaboration on that exception, to this case.

Plaintiff further claims that Defendant ARCO's alleged misrepresentations in its application to the COGCC for an exception to the 990 foot drilling rule somehow divests the tribal court of jurisdiction, presumably through application of *National Farmers'* second exception to the general exhaustion rule. I disagree. As an initial matter, I note that Plaintiff does not identify an *"express* jurisdictional prohibition[ ]" denying the tribal court the authority to consider the misrepresentation claim. *National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447 (emphasis added). In addition, although not addressed by either party, it appears that the dispute regarding the allegedly fraudulently procured exception became ripe for court review only when Defendant ARCO made significant preparations to drill the well in accordance with the exception granted by the COGCC. Before then, COGCC's action in granting the exception did not threaten a "direct and immediate impact upon the plaintiff." *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 243 (10th Cir.1991) (holding that four factors determine the ripeness of a dispute: "(1) whether the issues in the case are purely legal; (2) whether the agency action involved is 'final agency action' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff; and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency.") (citations omitted). Only Defendants' acts on the reservation rendered the dispute ripe for adjudication. As stated above, such actions dictate that I have "no discretion not to defer" to the tribal court. *Kerr–McGee,* 115 F.3d at 1507. *See Zah,* 5 F.3d at 1378 ("When the dispute at issue arises on the reservation," these comity concerns "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum.").

Moreover, Plaintiff waited over nine years to challenge Defendants' actions undertaken in accordance with the exception granted by the COGCC. Such a delay suggests that Defendants' alleged misrepresentations and the COGCC's decision did not themselves threaten a *"direct* and *immediate* impact upon the plaintiff." *Ash Creek Mining Co.,* 934 F.2d at 243 (emphasis added). Hence, *National Farmers'* second exception does not apply here based on Defendant ARCO's alleged misrepresentations to the COGCC.

Nor is *National Farmers'* second exception triggered by the Tribe's entry into the Communitization Agreement and the MOU. The former states that it is "subject to all applicable Federal and State laws or executive orders, rules and regulations." *Defendants' Motion to Dismiss,* Ex. A, at Ex. A to Communitization Agreement. The latter provides that "the Tribe is entitled to monitor and participate in the spacing, pooling and field rule requests that come before the Colorado Oil and Gas Conservation Commission." *Plaintiff's Sur-reply,* Ex.1, at 1. But neither states that the Tribe agreed to waive its jurisdiction, nor that exclusive jurisdiction lies in either state or federal court. Plaintiff cites *Strate* and *South Dakota v. Bourland* 508 U.S. 679, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) in support of its argument that the Tribe's signing of either document, or both, waived their jurisdiction over the property on which the well sits. Both cases are distinguishable on their facts. Neither is a tribal exhaustion case, and both involved alienated, non-Indian land. *See Strate,* 520 U.S. at 454, 117 S.Ct. 1404 ("The right-of-way North Dakota acquired for the State's highway renders the 6.59–mile stretch equivalent, for nonmember governance purposes, to alienated non-Indian land"); *Bourland,* 508 U.S. at 684 n. 4, 113 S.Ct. 2309 ("the Tribe conveyed all

interests in 104,420 acres of former trust lands to the United States"; "we ... assume that the United States owns the 104,420 acres in fee"). Consequently, I will not apply *National Farmers'* second exception to the tribal exhaustion rule to this case.

Finally, Plaintiff's argument regarding the *Montana* rule conflates the questions of exhaustion and jurisdiction. By arguing that this case falls under neither of the *Montana* exceptions, Plaintiff addresses whether the tribal court has jurisdiction over this case, not whether the tribal court should be permitted to address that question *before* the case is brought in state or federal court. As the Supreme Court has stated, the questions are distinct. *See Strate,* 520 U.S. at 448, 117 S.Ct. 1404 (in analyzing *National Farmers* and *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)), holding that "[b]oth decisions describe an exhaustion rule allowing tribal courts initially to respond to an invocation of their jurisdiction; neither establishes tribal-court adjudicatory authority, even over the lawsuits in those cases"; *National Farmers,* 471 U.S. at 856, 105 S.Ct. 2447 ("We believe that examination [of the question of a tribal court's jurisdiction] should be conducted in the first instance in the Tribal court itself"). *See also Enlow,* 134 F.3d at 995 ("we agree with the federal district court that the determination of whether tribal courts have subject matter jurisdiction over non-Indians in civil cases 'should be conducted in the first instance in the Tribal court itself'") (quoting *National Farmers,* 471 U.S. at 856, 105 S.Ct. 2447); *Kerr–McGee,* 115 F.3d at 1506 (holding that *Strate,* which interprets *Montana,* "is not a tribal exhaustion case"). *Montana* does not control this case.

For the foregoing reasons, because the activity at issue here takes place on Indian land, this case must be brought first in the tribal court.

## C.

Even if this dispute involved "non-Indian activity occurring outside the reserva-

tion," *Zah,* 5 F.3d at 1378, I would conclude that Plaintiff must exhaust its tribal court remedies. After an "assiduous" examination of the *National Farmers* factors, I conclude that comity concerns require application of the tribal exhaustion rule.

As for the first *National Farmers* factor, if courts are to honor Congress' commitment to tribal self-government, then tribal courts must be allowed to exercise their authority to determine the extent of tribal members' property rights in reservation land, particularly with respect to property that provides significant economic benefits to the Tribe. Even *Strate* and *Montana,* cases that curtailed tribal authority over non-Indians, recognized that tribes retain a core sovereign interest in protecting both their rights under leases of reservation property and their economic security. *See Strate,* 520 U.S. at 456–57, 117 S.Ct. 1404; *Montana,* 450 U.S. at 566, 101 S.Ct. 1245. Here, it is undisputed that Defendants possess a leasehold interest in the well and the property upon which it sits. Defendants state that to date they have paid out over $400,000 to the Tribe, and expect to pay the Tribe approximately $500,000 in the future. *Defendants' Motion to Dismiss,* Ex.A, at 2. An affidavit from the Director of the Department of Energy of the Tribe indicates that this income stream is "substantial." *Defendants' Reply,* Ex.E, at 2–3. Consequently, *National Farmers* first factor strongly supports abstention.

The second factor, the orderly administration of justice, also favors application of the tribal exhaustion rule. Permitting the tribal court to assess its own jurisdiction and potentially determine the merits of this case will minimize the likelihood of a "procedural nightmare" by decreasing the possibility that any decision I make will be overturned in the appeals process, thereby requiring the parties to address the same issues again in the tribal court. *See National Farmers,* 471 U.S. at 856, 105 S.Ct. 2447 (noting that the "risk of ... [a] 'pro-

cedural nightmare' " should be assessed in evaluating the second comity factor). In addition, to the extent that tribal law in any way influences this case, abstaining at this stage of the case will decrease the likelihood that I will have to certify any questions to the tribal court. Finally, to the extent that Defendants and/or the Tribe could seek some type of a declaratory judgment in tribal court regarding the same substantive questions raised here, parallel lawsuits in federal and tribal court hardly promote the "orderly administration of justice." *Kerr–McGee*, 115 F.3d at 1507 (citing *National Farmers*, 471 U.S. at 856–57, 105 S.Ct. 2447).

The third *National Farmers* factor, obtaining the benefit of tribal expertise preliminary to further judicial review, also favors exhaustion of tribal remedies. By permitting the tribal court to first determine its own jurisdiction, a federal court that may eventually be called upon to review this determination will have at its disposal a fully developed tribal court record from which to evaluate any challenges to that jurisdiction. Moreover, if the tribal court reaches the merits of the action, a federal court will have the benefit of the tribal court's interpretation of tribal law and customs that may apply to this case. I conclude, therefore, that the *National Farmers* comity factors favor application of the tribal exhaustion rule.

Accordingly, I ORDER that:

(1) Defendants' motion made pursuant to Rules 12(b)(1) and 12(b)(6) IS CONSTRUED as one for dismissal without prejudice on the ground of abstention;

(2) Defendant's motion, thus construed, is GRANTED;

(3) Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE.