FILED
United States Court of Appeals
Tenth Circuit

May 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

CROWE & DUNLEVY, P.C.,

      Plaintiff-Appellee,

v.

No. 09-5071

GREGORY R. STIDHAM,

      Defendant-Appellant

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:09-CV-00095-TCK-PJC)**

Michael A. Simpson (Marthanda J. Beckworth with him on the briefs) of Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., Tulsa, Oklahoma, for Defendant-Appellant.

Clyde A. Muchmore (James L. Kincaid and Susan E. Huntsman on the brief) of Crowe & Dunlevy, P.C., Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **BRISCOE**, Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Judge Gregory R. Stidham of the Muscogee (Creek) Nation District Court appeals the district court's order granting preliminary injunctive relief to Crowe & Dunlevy ("Crowe") and denying Judge Stidham's motion to dismiss. *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1227 (N.D. Okla. 2009). Because the district court correctly denied Judge Stidham's motion to dismiss and did not abuse its discretion in granting the preliminary injunction, we affirm.

**I.**

The pertinent facts are largely undisputed. Michael McBride, now a partner at Crowe, has long served as legal counsel to the Thlopthlocco Tribal Town (the "Thlopthlocco"). The Thlopthlocco is a federally recognized Indian tribe with its own Constitution and bylaws. It is also a tribal town of the Muscogee (Creek) Nation, another federally recognized Indian tribe. The Thlopthlocco reside on land held in trust for them by the United States, which is located within the historic boundaries of the Creek Nation. Pursuant to the Thlopthlocco Constitution, the governing body of the Thlopthlocco is its Business Committee, which has the power to transact business and to act and speak on behalf of the tribe.

The present case stems from Crowe's representation of the Thlopthlocco in the Muscogee (Creek) Nation District Court ("Muscogee District Court") in 2007, in a case alleging that Nathan Anderson, then a member of the Tholoptholocco

Business Committee, had attempted a *coup d' etat*, declared himself the only valid leader, and purported to appoint a new government. The Thlopthlocco asserted that Anderson and his allies (collectively, the "Anderson defendants") had interfered with the Thlopthlocco's business interests by, among other things, accessing the Thlopthlocco's bank accounts, issuing regulations on tribal letterhead, and meddling with the Thlopthlocco's contractual relationships with various third-party service providers. The Thlopthlocco sought both declaratory and injunctive relief.

The Thlopthlocco does not have an established judicial system of its own. It has previously waived its sovereign immunity and consented to jurisdiction in the Muscogee (Creek) Nation tribal courts for the purpose of specific lawsuits directed at dual Thlopthlocco-Muscogee citizens.[1] Before filing its complaint in Muscogee District Court in this case, the Thlopthlocco granted a narrow waiver of its sovereign immunity, stating:

> [T]he Thlopthlocco Tribal Business Committee does hereby waive its immunity on a limited basis only for the purpose of adjudicating this dispute only, only claims brought by the Plaintiff, Thlopthlocco Tribal Town, and only for injunctive and declaratory relief. This waiver of immunity shall not include elections disputes.

Aplt. Supp. App., vol. I, at 412.

---

[1] According to the Muscogee District Court in *Thlopthlocco Tribal Town v. Tomah*, 8 Okla. Trib. 451, 2004 WL 5744828, at *1 (Muscogee (Cr.) D. Ct. 2004), "prior to the filing of [that] lawsuit, the Thlopthlocco [had] never authorized the Muscogee (Creek) Nation to exercise jurisdiction over Thlopthlocco matters."

-3-

In response to the Thlopthlocco's complaint, Judge Patrick Moore of the Muscogee District Court temporarily enjoined the Anderson defendants from activities listed in the complaint, declared any official actions taken by them to be null and void, and set an evidentiary hearing. After the hearing, the court lifted the restraining order and dismissed the complaint, holding that the Creek Nation tribal court did not have jurisdiction to hear the dispute. On appeal, the Muscogee (Creek) Nation Supreme Court ("Muscogee Supreme Court") reversed that decision and ordered that the injunction remain in effect during the pendency of the tribal court litigation. In a subsequently issued opinion, the court held:

> The relationship between Thlopthlocco and the federal government is different from the relationship between Thlopthlocco and the Muscogee (Creek) Nation. Under federal law, Thlopthlocco is a reorganized Indian tribe; under tribal law, Thlopthlocco is a Muscogee (Creek) tribal town. See *Thlopthlocco* [*Tribal Town v. Tomah*, 8 Okla. Trib. 451, 2004 WL 5744828]. The Tribal Town Constitution affects neither the status of tribal town members as citizens of the Muscogee (Creek) Nation nor the relationship of the Tribal Town to the Muscogee Nation which remains analogous to a city/state government or state/federal government relationship.
>
> The members of Thlopthlocco Tribal Town, as citizens of the Muscogee Nation, have requested relief in the courts of the Muscogee (Creek) Nation. Neither the Town nor its members will be abandoned by the Nation's courts.

Aplt. Supp. App., vol. 4, at 01707-08

Thereafter, the Anderson defendants filed an answer claiming to be the true representatives of the Thlopthlocco. They subsequently filed a cross-claim against nine Thlopthlocco tribal members, alleging the nine cross-claim defendants had violated the Thlopthlocco Constitution by purporting to

-4-

unlawfully adopt six individuals as members of the tribe and permitting them to vote in the January 27, 2007 election. They also alleged that certain of the cross-claim defendants had violated the civil rights of some of the Anderson defendants by prohibiting them from voting in the last election, and the civil rights of defendant Anderson by attempting to strip him of his authority as Town King. For relief, the Anderson defendants asked that the January 27 election be declared void and that the cross-claim defendants be enjoined from interfering with the Thlopthlocco Town government as allegedly constituted by the Anderson defendants. In a trial brief filed shortly thereafter, however, the Anderson defendants requested a new election to be overseen by the Creek Nation court.

The Thlopthlocco and the nine cross-claim defendants filed a motion to dismiss the cross-claims for lack of subject matter jurisdiction. Before further proceedings, the Anderson defendants filed a motion requesting that the Thlopthlocco be ordered to pay their legal fees from the Thlopthlocco Treasury. The Anderson defendants argued they were entitled to fees from the tribe's treasury because of the possibility that, at the end of the litigation, they might be found to represent the legitimate government of the Thlopthlocco. They asserted there was precedent for the payment of both sides' attorneys fees when there is a dispute among members of a tribe. Judge Stidham granted the motion.[2]

---

[2] Judge Patrick Moore had in the meantime recused and Judge Stidham was appointed by the Muscogee Supreme Court to replace him.

The Thlopthlocco appealed Judge Stidham's order to the Muscogee Supreme Court, which, on January 16, 2009, reversed it as premature. *See id.*, vol. IV, doc. 96 ("January 16 Order"). The court reasoned that until the litigation was resolved, no one could know whether anyone among the litigants had the authority to spend Thlopthlocco funds. *See id.* In addition to denying the Anderson defendants' request for attorneys' fees, the Muscogee Supreme Court *sue sponte* ordered that "any attorneys' fees paid from the Thlopthlocco Treasury to the Plaintiff's counsel be returned and deposited into the Treasury." *Id.* Crowe was not named in the January 16 Order. There is no dispute, however, that Crowe had been paid by the Thlopthlocco for work it performed as plaintiff's counsel during the tribal court litigation, pursuant to an engagement letter and legal services contract.

The Thlopthlocco petitioned for rehearing of the January 16 Order. It argued, among other things, that the provision of the January 16 Order requiring the refund of Crowe's fees exceeded the limited waiver of sovereign immunity the Thlopthlocco had conferred upon the Muscogee (Creek) Nation courts, and that the Muscogee Supreme Court lacked jurisdiction to interfere with the Thlopthlocco's contractual relationship with Crowe or to divest the Thlopthlocco of its authority to pay its own legal counsel pursuant to that contract. Reading the January 16 Order as a directive to the Thlopthlocco, rather than to Crowe, the Thlopthlocco observed that "additional jurisdictional and due process concerns"

-6-

would have arisen if the January 16 Order had been directed to Crowe, a non-party. *Id.*, vol. IX, doc. 154, at 3368 n.6. The Muscogee Supreme Court summarily denied the petition.

On February 5, 2009, while the Thlopthlocco's petition for rehearing was still pending, Judge Stidham issued an order purporting to effectuate the Muscogee Supreme Court's January 16 Order. Unlike the Muscogee Supreme Court, Judge Stidham directed his order to Crowe, ordering the firm "to return attorneys' fees paid from the Thlopthlocco Treasury with proof of repayment furnished to this court on or before February 20, 2009." *Id.*, vol. V, doc. 101, at 1844 ("February 5 Order").

Instead of complying, Crowe filed this action seeking to enjoin Judge Stidham, in his official capacity as tribal judge, from ordering the return of Crowe's legal fees. In addition, Crowe sought an order declaring that, among other things, the Muscogee (Creek) Nation courts lacked jurisdiction to order Crowe, as a non-party and non-Indian, to return fees it had earned for services rendered to the Thlopthlocco. Simultaneously, Crowe notified the Muscogee District Court and the Muscogee Supreme Court that it was withdrawing from its representation of the Thlopthlocco due to the conflict of interest resulting from Judge Stidham's order that Crowe return its fees to the tribe.[3]

---

[3] Represented by new counsel, the Thlopthlocco then moved to dismiss its complaint against the Anderson defendants. In their response to this motion, the
(continued...)

When no funds were returned, Judge Stidham ordered Crowe attorneys to "appear and show cause why they should not be held in indirect contempt of court" for failing to comply with his February 5 Order. *Id.*, vol. V, doc. 111, at 2016. Apparently in response to the looming contempt proceedings, Crowe filed a motion for a preliminary injunction in the present action, effectively renewing its request that Judge Stidham be enjoined from "enforcing his February 5 Order or otherwise attempting to enforce the January 16 Order as it relates to Crowe, until the pending litigation is resolved." Aplt. App., doc. 3, at 22. In response, Judge Stidham moved to dismiss the complaint, asserting lack of subject matter jurisdiction, failure to join indispensable parties, and improper venue.[4]

The district court denied Judge Stidham's motion to dismiss and granted Crowe's request for a preliminary injunction. The injunction "enjoin[ed] Judge

---

[3](...continued)
Anderson defendants stated they had no objection to the tribe dismissing its action against them but asserted their cross-claim against the nine individuals still needed to be considered. The tribe and the cross-claim defendants contended, to the contrary, that the Muscogee District Court does not have subject matter jurisdiction to hear the cross-claim because it is, in effect, a suit against the Thlopthlocco for which the tribe has not waived sovereign immunity. The Anderson defendants then asserted that their cross-claims against the individual defendants in their official capacity and prospective injunctive relief is therefore authorized under the *Ex Parte Young* exception to sovereign immunity because the cross-claim defendants acted outside the scope of their lawful authority. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). The court held in favor of the Anderson defendants and, insofar as we can ascertain, the issue is still pending before the Muscogee Supreme Court on interlocutory appeal.

[4] The show-cause proceeding in tribal court appears to have been held in abeyance at least until resolution of the instant appeal.

Stidham from enforcing the February 5 Order or attempting to enforce the January 16 Order as it relates to Crowe during the pendency of the litigation." *Crowe & Dunlevy, P.C.*, 609 F. Supp. 2d at 1227.[5]  This appeal followed.

On appeal, Judge Stidham challenges the district court's denial of his motion to dismiss and its decision to preliminarily enjoin him.  He contends the case should have been dismissed because he is entitled to sovereign and judicial immunity, and because the Muscogee (Creek) Nation judiciary ("Muscogee Judiciary") is an indispensable party which cannot be joined due to its sovereign immunity.  Alternatively, he asserts that Crowe failed to make the requisite showing of irreparable harm to support injunctive relief.

## II.

We consider first the scope of our interlocutory jurisdiction and the related question of whether it was appropriate for the district court to exercise jurisdiction before requiring Crowe to first exhaust its claims in tribal court.

### A.

Although our jurisdiction normally extends only to appeals from "final decisions" of district courts, *see* 28 U.S.C. § 1291, there are exceptions to the

---

[5] The district court did not decide the merits of Crowe's request for declaratory relief, finding only that the likelihood of success on the merits of that claim was sufficient for purposes of issuing the preliminary injunction. *Crowe & Dunlevy, P.C.*, 609 F. Supp. 2d at 1223 n.7, 1224-27.

final judgment rule. A statutory exception permits immediate appeal of certain specified "interlocutory decisions." 28 U.S.C. § 1292. Other types of orders that do not finally resolve a case are appealable under the "collateral order" doctrine set forth by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See Mohawk Indus., Inc. v. Carpenter*, 130 S.Ct. 599, 605 (2009) (discussing doctrine); *Woodruff v. Covington*, 389 F.3d 1117, 1121-22 (10th Cir. 2004) (same). Still other orders may be reviewed under the doctrine of pendent appellate jurisdiction. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43-51 (1995) (discussing doctrine); *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200 (10th Cir. 2002) (same); *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1114 (10th Cir. 1999) (observing that the exercise of our pendent appellate jurisdiction is discretionary).

Orders granting or denying preliminary injunctions are among the types of interlocutory orders that are immediately appealable under 28 U.S.C. § 1292. We thus have jurisdiction pursuant to § 1292(a)(1) to review the district court's grant of Crowe's request for a preliminary injunction. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 750 (10th Cir. 2010).

While orders denying motions to dismiss typically are not immediately appealable to this court, *see, e.g.*, *Timpanogos Tribe*, 286 F.3d at 1201 n.2, it is undisputed that we have interlocutory jurisdiction under the collateral order doctrine to review the district court's denial of Judge Stidham's motion to dismiss

on grounds of sovereign and judicial immunity. *See Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1177 n.1 (10th Cir. 2010) (denial of tribal sovereign immunity); *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (denial of state sovereign immunity); *cf. Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989) (denial of quasi-judicial immunity).

Crowe contends, however, that we lack jurisdiction to review the district court's determination that the Muscogee Judiciary is not a "required" party under Rule 19. *See* Fed. R. Civ. P. 19(a) (required joinder); Fed. R. Civ. P. 12(b)(7) (permitting motion to dismiss for failure to join indispensable party pursuant to Rule 19). Crowe asserts the district court's Rule 19 ruling does not fall within the scope of the collateral order doctrine or satisfy the requirements for pendent appellate jurisdiction. Judge Stidham counters that we should exercise pendent appellate jurisdiction over this issue.

As an initial matter, we agree the collateral order doctrine does not justify interlocutory review of the district court's Rule 19 determination. To qualify for review under that doctrine, a decision must be "effectively unreviewable on appeal from the final judgement." *Mohawk Indus., Inc.*, 130 S.Ct at 601 (internal quotation marks omitted); *accord Yousef v. Reno*, 254 F.3d 1214, 1217-18 (10th Cir. 2001). The district court's Rule 19 determination does not meet this condition. Should Judge Stidham suffer an adverse ruling on the merits, we could

-11-

review the district court's rejection of his Rule 19 claim in an appeal from that judgment. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 106 (1968) (considering Rule 19 determination on appeal from final judgment); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Assoc.*, 471 F.3d 377, 383-84 (2d Cir. 2006) (holding Rule 19 Order is not appealable under *Cohen*). Because the district court's Rule 19 ruling may be effectively reviewed after final judgment, we lack jurisdiction to consider it under the *Cohen* doctrine.

The Supreme Court has suggested that taking pendent appellate jurisdiction may be appropriate where a district court's decision on a pendent claim was "inextricably intertwined" with the district court's decision on a non-pendent claim, or "where [appellate] review of the former [is] necessary to ensure meaningful review of the latter." *Swint*, 514 U.S. at 51. We have interpreted *Swint* to mean that the exercise of our pendent appellate jurisdiction is *only* appropriate when "the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one." *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 915 (10th Cir. 2008) (quoting *Timpanogos Tribe*, 286 F.3d at 1200) (internal quotation marks omitted). We conclude that neither condition is satisfied here.

A pendent claim may be considered "inextricably intertwined" only if it is "coterminous with, or subsumed in, the claim before the court on interlocutory

-12-

appeal–that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995); *accord Breakthrough Mgmt. Group, Inc.*, 629 F.3d at 1196-97 (applying test). The preliminary injunction issue in this case turns on whether Crowe established it would suffer irreparable harm absent an injunction against Judge Stidham. We can undertake a meaningful analysis of that issue, along with the immunity issues, without reaching or resolving the Rule 19 claim, which turns on whether Crowe is capable of obtaining complete relief without an injunction against the entire Muscogee Judiciary.[6] *See* Fed. R. Civ. P. 19(a)(1)(A). In our view, the Rule 19 issue is not sufficiently connected with the other issues properly before us to justify the exercise of pendent jurisdiction.

In urging the contrary result, Judge Stidham appears to argue we need to decide whether the Muscogee Judiciary is an indispensable party in order to ensure we have jurisdiction over the present appeal. We disagree. "The issue of indispensability under Rule 19 is not a jurisdictional question." *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 n.4 (10th Cir. 1997). Even assuming for the sake of argument that the Muscogee Judiciary is indispensable, its absence would not render the district court or this court without subject matter

---

[6] In a footnote, Judge Stidham implies that the Thlopthlocco as well as the Anderson defendants may also be indispensable parties. He does not make any reasoned argument to support that position, however, so we do not consider it. *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994).

jurisdiction to proceed.  *See* Advisory Committee Notes to 1966 Amendments to Fed. R. Civ. P. 19 (explaining that Rule 19 was altered to alleviate the "familiar confusion" that "the absence from the lawsuit of a person who was 'indispensable' or 'who ought to be a party' itself deprived the court of the power to adjudicate as between parties already joined") (alterations omitted).

**B.**

The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts typically "should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted."  *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992); *see also Iowa Mut. Ins. Co v. LaPlante*, 480 U.S. 9, 17 (1987); *Nat'l Farmers Union Ins. Co. v. Crowe Tribe of Indians*, 471 U.S. 845, 856-57 (1985).[7]  The rule is based on Congress's "strong interest in promoting tribal sovereignty, including the development of tribal courts."  *Smith v. Moffett*, 947 F.2d 442, 444 (10th Cir. 1991).  Comity considerations inherent in federal-tribal litigation compel us to assess whether we must abate this federal action in order to permit Crowe to exhaust its jurisdictional claims in the Muscogee (Creek) Nation tribal and appellate courts.  *See id.* at 445; *see also United States v.*

---

[7]  The exhaustion issue was not squarely raised below or on appeal until we raised it at oral argument.  The parties had an adequate opportunity to address the exhaustion issue during oral argument and in subsequent submissions pursuant to Federal Rule of Appellate Procedure Rule 28(j).

*Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996).

While conceding that the determination of whether the tribal court has subject matter jurisdiction over non-Indians in civil cases often "should be conducted in the first instance in the Tribal Court itself," *Nat'l Farmers Union Ins. Co.*, 471 U.S. at 856, Crowe appears to contend that the Muscogee Supreme Court, in fact, made such a determination when it summarily denied the Thlopthlocco's petition to rehear the January 16 Order. We are not persuaded that is necessarily so. As described above, the Thlopthlocco's primary argument in its petition for rehearing was that the Muscogee (Creek) Nation courts lacked jurisdiction to require the *Thlopthlocco* to obtain and return fees paid to Crowe. While the Thlopthlocco asserted in a footnote that the tribal courts also lacked jurisdiction over *Crowe*, it is not possible to determine from the summary order whether the Muscogee Supreme Court rejected that alternative jurisdictional argument in denying the Thlopthlocco's petition. On the contrary, the court may well have determined it had jurisdiction to enter the January 16 Order as to the Thlopthlocco, without considering the related question of whether it had jurisdiction over Crowe. Because summary dispositions are "decisions on the merits" only as to the "precise issues presented and *necessarily decided* by those actions," *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 499 (1981) (emphasis added) (internal quotation marks omitted), we simply cannot conclude with certainty that the Muscogee Supreme Court actually determined tribal

jurisdiction was proper as to Crowe.

Crowe's reliance on *Enlow v. Moore*, 134 F.3d 993, 995-96 (10th Cir. 1998), does not persuade us otherwise. In *Enlow*, we held that tribal remedies were sufficiently exhausted when the Muscogee (Creek) Nation Supreme Court held it had adjudicatory jurisdiction over a boundary dispute via-a-vis a non-Indian landowner, who was a party in the underlying tribal litigation. In that case, unlike the present one, the Muscogee Supreme Court not only had the opportunity to review the landowner's jurisdictional claim, but also clearly exercised that opportunity by squarely holding that tribal jurisdiction was proper over the dispute and the non-Indian party. *Enlow* does not address whether the tribal exhaustion rule may be satisfied where, as here, the tribal court had an opportunity to pass on its jurisdiction but failed expressly to do so. Nor do we address that issue today because, as explained below, we conclude that Crowe was not required to exhaust its jurisdictional claim in tribal court due to the exceptional circumstances of this case.

As a prudential rule based on comity, the exhaustion rule is not without exception. Relevant here, exhaustion is not required if it is "clear that the tribal court lacks jurisdiction," such that "the exhaustion requirement would serve no purpose other than delay." *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)). Crowe was not a party in the tribal court action and is not an Indian

entity.  There is a presumption against tribal civil jurisdiction over non-Indians under *Montana v. United States*, 450 U.S. 544, 564-65 (1981), and its progeny.  *See also Plains v. Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 329-30 (2008); *Hicks*, 533 U.S. at 367-70.  This is so because while the tribes have authority to exercise civil jurisdiction over their own members, "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation."  *Montana*, 450 U.S. at 564 (citations omitted).  Generally, therefore, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."  *Id.* at 565.

There are two exceptions to *Montana*'s general rule against tribal court jurisdiction over non-Indians.  Under the first, a tribe may regulate "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other agreements."  *Id.*  Under the second, a tribe may exercise authority over nonmember conduct where "the conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  *Id.* at 566.  The Supreme Court has made clear, however, that in applying these exceptions "to nonmembers . . . , a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction."  *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997); *accord Hicks*, 533 U.S. at

-17-

357-58. Tribal courts are thus not courts of general jurisdiction. As the Court has explained:

> A state court's jurisdiction is general, in that it lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe. Tribal courts, it should be clear, cannot be courts of general jurisdiction in this sense, for a tribe's inherent adjudicative jurisdiction over nonmembers is at most only as broad as it is legislative jurisdiction.

*Hicks*, 533 U.S. at 367 (internal quotation marks and citations omitted).

There is no dispute that *Montana* and its progeny govern whether the Muscogee (Creek) Nation courts have adjudicatory jurisdiction over Crowe. Judge Stidham maintains tribal court jurisdiction is appropriate under *Montana*'s first exception because, in his view, Crowe entered a "consensual relationship" with the Muscogee (Creek) Nation by enrolling in its bar association and practicing before its courts. It is true that membership in a tribe's bar association and appearances before its courts can constitute a "consensual relationship" with the tribe. But that is not the end of the *Montana* inquiry. Such a "consensual relationship" may establish tribal court jurisdiction under *Montana* only if there is a sufficient "nexus" between that relationship and the attendant "exertion of tribal authority." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1223 (10th Cir. 2002).

The question thus posed is whether there is a sufficient nexus between Crowe's practice before the Muscogee (Creek) Nation courts and Judge Stidham's

-18-

order requiring Crowe to return attorneys' fees already paid to it pursuant to its contract with the Thlopthlocco pending determination of the merits of the underlying tribal court litigation. We hold there is not. The vast majority of cases Judge Stidham cites for his proposition that a tribal court has power to regulate attorneys who practice before it are cases addressing disciplinary matters, in which courts have permitted suits against defendant-attorneys for alleged misconduct. *See, e.g.*, *Trinity Indus. v. Myers & Assocs.*, 41 F.3d 229 (5th Cir. 1995) (breach of fiduciary duty, civil conspiracy, negligence); *Johnson v. Shaines & McEachern, P.A.*, 835 F. Supp. 685 (D.N.H. 1993) (legal malpractice); *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235 (E.D. Va. 1977) (malpractice, breach of contract, conversion, conspiracy); *Waterval v. District Court*, 620 P.2d 5 (Colo. 1980) (breach of fiduciary obligations); *In re Estate of Vernon*, 609 So. 2d 128 (Fla. Dist. Ct. App. 1992) (legal malpractice); *Sifers v. Horen*, 177 N.W.2d 189 (Mich. Ct. App. 1970) (negligence); *cf. Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373 (10th Cir. 1994) (affirming motion to disqualify counsel). Those cases are inapposite here, where there has never been any allegation that Crowe attorneys acted unprofessionally before the Muscogee (Creek) Nation courts, and where the order directing Crowe to return its fees had nothing to do with conduct of Crowe attorneys practicing before the court.

Judge Stidham's reliance on cases in which courts have exercised ancillary jurisdiction over attorneys' fees issues is equally unavailing. Those cases involve

the exercise of ancillary jurisdiction where there is an actual or potential disagreement between an attorney and his client regarding attorneys' fees related to the judgment in the proceeding. *See, e.g.*, *Garrick v. Weaver*, 888 F.2d 687, 690-92 (10th Cir. 1989); *Jenkins v. Weinshienk*, 670 F.2d 915, 917-18 (10th Cir. 1982); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1109-12 (7th Cir. 1982); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 96-101 (2d Cir. 2003). Here, there is no allegation regarding any tension between Crowe and the Thlopthlocco regarding attorneys' fees to establish the requisite nexus in this case. To the contrary, there is every indication that the Thlopthlocco Tribe, as currently constituted, does not want Crowe to return funds paid to it for past legal services pursuant to their contract.

For ancillary jurisdiction over Crowe as a nonmember of the tribe to be appropriate under the consensual relationship exception to *Montana*, the dispute before the tribal court must arise directly out of that consensual relationship. *See* Sarah Krakoff, *Tribal Civil Judicial Jurisdiction Over Nonmembers: A Practical Guide for Judges*, 81 U. Colo. L. Rev. 1187, 1225-26 (2010) ("[W]hether affirming or rejecting the consensual relationship exception [of *Montana*], [courts have] followed *Strate*'s admonition that the claim must arise from the consensual relationship with the tribe or tribal members."). That is not the case here.

Crowe's contractual relationship with the Thlopthlocco government has nothing to do with Crowe attorneys' consensual relationship with the Creek

-20-

Nation based on their Bar membership. Nor is Crowe's consensual relationship with the Creek Nation related to the dispute before Judge Stidham. The substance of the Anderson defendants' cross-claim in tribal court is that the January 27, 2007 election was invalid and the wrong tribal members are therefore running the government. What the Anderson defendants seek is prospective injunctive relief against the nine individual cross-claim defendants, some of whom constitute the Business Committee of the Thlopthlocco, to correct this alleged wrong. *See supra* note 3. Even assuming the Anderson defendants should ultimately prevail on their claim, the relief they are requesting is that the January 27, 2007 election of the current government be declared invalid. Presumably, a new election would have to be conducted.[8] Who would win that election and become the new Business Committee of the Thlopthlocco is unknown and is not a part of this tribal court litigation. Whether that Business Committee would seek to avoid any third-party contracts made by the prior Business Committee on behalf of the Thlopthlocco and attempt to recover any amounts paid under such contracts, including the contract with Crowe, is also unknown and is not a part of the litigation before Judge Stidham. While the Creek Nation has jurisdiction to regulate its own citizens, the Thlopthlocco is an independent tribal entity that

---

[8] It is noteworthy that the Anderson defendants never asked Judge Stidham or the Muscogee Supreme Court to order Crowe to return the fees it had been paid. Instead, they argued that the attorneys fees of *both parties* should be paid out of the Thlopthlocco Treasury for the duration of the litigation.

elects its own government pursuant to its own Constitution and is not itself a citizen of the Creek Nation. Judge Stidham does not suggest that the Creek Nation has any regulatory power over the contracts the Thlopthlocco makes with third parties in general. Instead, Judge Stidham contends "the issue of the Muscogee (Creek) Nation's jurisdiction over the law firm's contract is simply one aspect of the Muscogee (Creek) Nation's jurisdiction over the law firm in general as attorneys practicing before its courts." Reply Br. at 10. No case supports ancillary jurisdiction in circumstances like those here, where the claim that Crowe must return its fees has nothing to do with the reasonableness of fees. Because the validity of the fee contract is not relevant to Crowe's practice before the Creek Nation courts or its attorneys' membership in the Creek Nation's bar association, Judge Stidham did not have adjudicatory authority to order Crowe to return fees it received pursuant to its contract with the Thlopthlocco.

We therefore conclude that the first *Montana* exception does not support the exercise of tribal court jurisdiction over Crowe with respect to the fees it received from the Thlopthlocco. While Crowe attorneys submitted themselves to the Muscogee (Creek) Nation tribal court when they brought the Thlopthlocco litigation, there is no basis on which to conclude they or the firm submitted themselves to the general subject matter jurisdiction of the tribal court for all purposes, especially not for the purpose of voiding their contractual relationship with the Thlopthlocco, when that contract is not, directly or indirectly, part of the

-22-

Anderson defendant's claims before the court.

Nor does the second *Montana* exception apply. That exception is a narrow one which authorizes a tribe to exercise civil jurisdiction over a non-Indian whose conduct implicates the "political integrity, the economic security, or health or welfare of the tribe." *Montana*, 450 U.S. at 566. To support jurisdiction under this exception, the conduct must "imperil the subsistence of the tribal community." *Plains*, 554 U.S. at 341 (internal quotation marks omitted). Crowe's conduct in representing the Thlopthlocco, and being paid by it for doing so, does not undermine the sovereignty or welfare of the Muscogee (Creek) Nation, a separate tribal entity.

In the absence of any compelling argument establishing tribal court jurisdiction over Crowe, a nonmember of the Creek Nation tribe who was not a party to the tribal court litigation, we hold that the Muscogee (Creek) Nation courts plainly did not have jurisdiction to order Crowe to return fees it already had earned pursuant to its legal services contract with the Thlopthlocco. Accordingly, the exhaustion requirement would serve no purpose, and there is no need to require further tribal court litigation before the exercise of federal jurisdiction in this case.

## III.

Judge Stidham asserts he is entitled to both sovereign and judicial immunity "because he acted within the scope of his authority as a tribal court judge." Aplt. Br. at 1. We review *de novo* the district court's denial of tribal sovereign immunity, *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007), and its denial of judicial immunity, *see Malik v. Arapahoe Cnty. Dept. of Soc. Servs.*, 191 F.3d 1306, 1313 (10th Cir. 1999).

## A.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *accord Berrey v. Asarco, Inc.*, 439 F.3d 636, 643 (10th Cir. 2006); *see Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-60 (1998); *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165 (1977). This immunity extends to tribal officials, so long as they are acting within the scope of their official capacities. *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997); *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006); *cf. Santa Clara Pueblo*, 436 U.S. at 58.

Tribal immunity is similar, although not identical, to immunity afforded to states under the Eleventh Amendment. *Compare Kiowa Tribe*, 523 U.S. at 753-59 (describing evolution of common law doctrine of tribal immunity) *with Hans v.*

-24-

*Louisiana*, 134 U.S. 1, 11-15 (1890) (reading Eleventh Amendment to preclude suits by citizens against sovereign states). Tribes and states both enjoy immunity from suit by virtue of their status as pre-Constitutional sovereigns. *See Santa Clara Pueblo*, 436 U.S. at 56 (describing tribes as "separate sovereigns pre-existing the Constitution"); *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution . . . ."). The scope of tribal immunity, however, is more limited. *See Plains Commerce Bank. v. Long Family & Cattle Co.*, 554 U.S. 316, 327 (2008) (noting that the "sovereignty the Indian tribes retain is of a unique and limited character" (internal quotation marks omitted)); *Montana v. United States*, 450 U.S. 544, 563 (1981) (observing that with their incorporation into the United States, "Indian tribes have lost many of the attributes of sovereignty"). Because tribal immunity is a matter of federal common law, not a constitutional guarantee, its scope is subject to congressional control and modification. *See Kiowa Tribe*, 523 U.S. at 759 (recognizing plenary authority of Congress to alter tribal immunity); *cf. United States v. Lara*, 541 U.S. 193 (2004) (upholding federal statute relaxing previously recognized bounds of tribal authority).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin alleged ongoing violations of federal law. *See id*. at 159-60;

*Hill v. Kemp*, 478 F.3d 1236, 1255-59 (10th Cir. 2007) (discussing rationale and subsequent history of *Ex parte Young*). The *Ex parte Young* exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (noting "fiction of *Young*"); *Hill*, 478 F.3d at 1256 (same). By adhering to this fiction, the *Ex parte Young* doctrine enables "federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Pennhurst*, 465 U.S. at 105; *see also Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th 1998) (internal quotation marks omitted).

In prior cases, we have applied *Ex parte Young*, albeit implicitly, in the tribal context. *See Burrell*, 456 F.3d at 1174; *Tenneco Oil Co. v. Sac & Fox Tribe of Indians*, 725 F.2d 572, 574 (10th Cir. 1984) (per curiam). Today we join our sister circuits in expressly recognizing *Ex parte Young* as an exception not just to state sovereign immunity but also to tribal sovereign immunity. *See, e.g.*, *Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008); *N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460 (8th Cir. 1993); *Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians*, 177 F.3d 1221, 1225-26 (11th Cir 1999); *cf. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 514 (1991) (leaving open *Ex parte*

*Young's* applicability in tribal context). We see no reason to restrict tribal sovereign immunity from the reaches of the *Ex parte Young* doctrine, particularly when Congress retains plenary authority to do so, *cf. Kiowa Tribe*, 523 U.S. at 758-60.

In the present case, we are asked to consider whether *Ex parte Young* may be applied to enjoin a violation of federal common law, namely, the unlawful exercise of tribal court jurisdiction. *See Hicks*, 533 U.S. at 357-60 (recognizing common law basis of tribal court jurisdiction); *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 890 (1986) (similar). Judge Stidham argues that *Ex parte Young* only applies when a complaint alleges an ongoing violation of the United States Constitution or a federal statute, and that an ongoing violation of federal common law is insufficient to sustain application of the doctrine. We disagree.

Judge Stidham cites no case, and we have found none, explicitly limiting the application of *Ex parte Young* to alleged violations of federal constitutional or statutory law, or conversely, refusing to apply the doctrine because the alleged violation was merely one of federal common law. In prior cases, we have assumed that federal common law was sufficient to sustain the application of the doctrine. *See, e.g.*, *Johns v. Stewart*, 57 F.3d 1544, 1549 (10th Cir. 1995) (noting that "[t]o properly bring their claim under *Ex parte Young*, Plaintiffs must assert an ongoing violation of a federal right" and analyzing whether plaintiffs had done so under federal common law); *Am. Petrofina Co. v. Nance*, 859 F.2d 840, 841-42

(10th Cir. 1988) (applying *Ex parte Young* on basis of violation of federal common law).  Today we expressly so hold.

The Supreme Court has explained that, in determining whether the doctrine of *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon, Inc. v. Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S 635, 645 (2002) (internal quotation marks omitted) (alteration in original); *see also Va. Office for Protection & Advocacy v. Stewart*, No. 09-529, 2011 WL 1466121, at *6 (U.S. Apr. 19, 2011) (applying *Verizon*); *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (same).  A prayer for injunctive relief asking "that state officials be restrained from enforcing an order in contravention of controlling federal law" satisfies *Verizon*'s straightforward inquiry.  *Verizon,* 535 U.S. at 645.  *Verizon*'s direction does not limit the *Ex parte Young* inquiry to whether federal constitutional or statutory law has been violated, and we reject Judge Stidham's argument that federal common law is inadequate to sustain the application of the *Ex parte Young* doctrine.

Our conclusion accords with the logic of *Ex parte Young*, which was motivated by a recognition of, and allegiance to, federal law as the supreme law of the United States.  *See Ex Parte Young*,  209 U.S. at 167 (adopting "immunity stripping" rationale on ground that "the state cannot . . . impart to the official

-28-

immunity from responsibility of the supreme authority of the Untied States").

Under *Ex parte Young*, certain official-capacity suits are excepted from the

doctrine of sovereign immunity as a way to vindicate federal rights and, in the

process, ensure the supremacy of federal law. *See, e.g.*, *Pennhurst*, 465 U.S. at

105 ("[T]he *Young* doctrine has been accepted as necessary to permit the federal

courts to vindicate federal rights and hold state officials responsible to the

supreme authority of the United States." (internal quotation marks omitted)); *see*

*also Va. Office for Protection & Advocacy*, 2011 WL 1466121, at *6 (endorsing

*Pennhurst*, 465 U.S. at 105-07); *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 293

(1997) ("*Ex parte Young* gives life to the Supremacy Clause." (quoting *Green v.*

*Mansour*, 474 U.S. 64, 68 (1985)); *accord Buchwald*, 159 F.3d at 495 (endorsing

*Pennhurst*, 465 U.S. at 105). This rationale applies with equal force here, where

federal common law has been recognized as the supreme law of the United States,

*cf. Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955), and

there is an established "federal right to be protected against the unlawful exercise

of Tribal Court judicial power." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216,

1225 (10th Cir. 2002) (internal quotation marks omitted).

Applying the instruction of *Verizon* and logic of *Ex parte Young*, we hold

that the alleged unlawful exercise of tribal court jurisdiction in violation of

federal common law is an ongoing violation of "federal law" sufficient to sustain

the application of the *Ex parte Young* doctrine. Satisfied that Crowe seeks

-29-

prospective relief to enjoin a tribal official from enforcing an order in contravention of controlling federal law, we agree with the district court that this action falls within the *Ex parte Young* exception, and therefore is not barred by the doctrine of sovereign immunity.

**B.**

Given our conclusion that this action falls within *Ex parte Young*'s exception to sovereign immunity, we may dispense quickly with Judge Stidham's contention that he is entitled to judicial immunity. We hold he is not.

Judicial immunity applies only to personal capacity claims. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) ("When it comes to defenses of liability, an official in a personal-capacity action may . . . be able to assert personal immunity defenses . . . . In an official-capacity action, these defenses are unavailable."). The *Ex parte Young* exception applies in this case because Crowe seeks relief from Judge Stidham in his official capacity. *See, e.g.*, *Kemp*, 478 at 1255-56. Judicial immunity does not apply here because Judge Stidham was not sued in his individual capacity.

Because this ground is a sufficient basis for affirming the district court's denial of judicial immunity, we need not consider whether, as the district court concluded, judicial immunity is likewise inapplicable under the exception for actions seeking prospective injunctive relief set forth in *Pulliam v. Allen*, 466

U.S. 522 (1984).  *See Harris v. Champion*, 51 F.3d 901, 905 (10th Cir. 1995).

## IV.

We turn finally to Judge Stidham's contention that the district court erred in preliminarily enjoining him from ordering Crowe to return its fees to the Thlopthlocco pending resolution of the underlying litigation in tribal court.  We review the district court's grant of a preliminary injunction for an abuse of discretion.  *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1226 (10th Cir. 2005).  "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling."  *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (citation omitted).

To obtain a preliminary injunction, a plaintiff must show: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public's interest."  *Chamber of Commerce v. Edmonson*, 594 F.3d 742, 764 (10th Cir. 2010) (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 65.  Judge Stidham primarily contends the district court should not have issued the preliminary injunction because Crowe failed to establish the second factor – i.e., that it would suffer

irreparable harm without the injunction.

A plaintiff satisfies the irreparable harm requirement by showing "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation marks omitted). Purely speculative harm will not suffice, but "[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied this burden." *Id.* (internal quotation marks omitted).

In finding that Crowe had demonstrated it would suffer irreparable harm if an injunction did not issue, the district court concluded that "there is a significant risk that Crowe will be forced to expend unnecessary time, money, and effort litigating the issue of their fees in the Muscogee Nation District Court – a court which likely does not have jurisdiction over it." *Crowe & Dunlevy, P.C.*, 609 F. Supp. 2d at 1222. It also concluded that, without an injunction, there would be a "significant risk that Crowe would be subject to inconsistent judgments." *Id.* at 1223. In particular, the court explained that Crowe would be required to return its fees to the Thlopthlocco Treasury, leaving the firm without recourse to recoup the fees because, as a sovereign entity, the Thlopthlocco is immune from suit. Id.

We agree with the district court that Crowe faces a significant risk of financial injury which, given the unique circumstances of this case, creates an irreparable harm sufficient to support a preliminary injunction. While economic

-32-

loss is usually insufficient to constitute irreparable harm, *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008), the "[i]mposition of money damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury." *Edmonson*, 594 F.3d at 770-71; *see also Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929); *Kan. Health Care Ass'n Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994).

Without an injunction, the Muscogee District Court will undoubtedly order Crowe to return its attorneys fees to the Thlopthlocco Treasury. Should the Anderson defendants prevail in the underlying tribal litigation, such that they are deemed the rightful governing body of the Thlopthlocco, Crowe will have no realistic way to recoup its fees. It is highly unlikely that a Thlopthlocco government, as reconstituted by the Anderson defendants, would voluntarily return funds to Crowe. And Crowe would have no legal recourse because the newly constituted Thlopthlocco would be immune from suit. *See Okla. Tax. Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991).[9] The only practical way for Crowe to recover its fees would be for its client to obtain a favorable ruling in the Muscogee courts. In the unique circumstances of

---

[9] Judge Stidham's suggestion that "Crowe's contract contained an immunity waiver," Aplt. Reply Br. at 9, does not persuade us otherwise. It is doubtful such a waiver would be enforceable against a putative Thlopthlocco government comprised of the Anderson defendants. Those defendants claim that the Business Committee members who signed the contract with Crowe were invalidly elected. There is every indication the Anderson defendants would seek to void Crowe's contracts with its client as ultra vires.

this case, the district court did not abuse its discretion in concluding that Crowe's significant risk of financial injury arising from irrecoverable attorneys fees is an irreparable harm sufficient to support the issuance of a preliminary injunction.[10]

Nor did the district court err in concluding that the other Rule 65 factors were satisfied. In urging that the "balance of equities" do not favor the issuance of the preliminary injunction, Judge Stidham argues he is harmed by "the invasion of the Injunction into the authority of the Muscogee (Creek) Nation tribal courts to regulate attorneys practicing before them." Aplt. Br. at 43. Judge Stidham did not make this argument in district court. We normally do not address arguments not presented to the district court in the first instance. *United States v. Jarvis*, 499 F.3d 1196, 1201-02 (10th Cir. 2007). In any event, this argument is simply a refashioning of Judge Stidham's general sovereign immunity and tribal court jurisdiction arguments, which we already have found unpersuasive.

Similarly, we reject Judge Stidham's contention that the injunction is against public policy because it impairs the authority of the tribal courts. This argument, like his balance-of-equities argument, is a recasting of the sovereign immunity and tribal jurisdiction arguments we have rejected. We simply are not

---

[10] Because we conclude the district court did not abuse its discretion in finding irreparable harm on this ground, we need not consider whether Crowe's expenditure of time, money, and effort in litigating before the tribal court provides an additional basis for finding irreparable harm. Our holding is limited to the economic injury related to Crowe's likely irrecoverable attorneys' fees.

-34-

persuaded the exertion of tribal authority over Crowe, a non-consenting, nonmember, is in the public's interest. *Cf. MacArthur*, 309 F.3d at 1225.

Finally, given our holding that the Muscogee (Creek) Nation courts plainly lacked jurisdiction to require Crowe to return its fees to the Thlopthlocco, Crowe's probability of success on the merits is without question. Accordingly, we conclude the district court did not abuse its discretion in granting the preliminary injunction against Judge Stidham.

For the reasons stated above, we **AFFIRM**.