FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 29, 2014**

Elisabeth A. Shumaker
Clerk of Court

DOUGLAS A. GLASER,

Plaintiff–Appellant,

v.

THE CITY AND COUNTY OF
DENVER, COLORADO; MITCH
MORRISSEY, in his official and
individual capacities; JOE MORALES,
Denver Deputy District Attorney, in his
official and individual capacities;
KENNETH LAFF, Denver Assistant
District Attorney, in his official and
individual capacities; DAVID KARPEL,
Denver Assistant District Attorney, in his
official and individual capacities;
PHILLIP GEIGLE, Denver Assistant
District Attorney, in his official and
individual capacities; RHEA BABCOCK,
Colorado Division of Securities
Investigator, in her official and individual
capacities; JOE JOYCE, Social Security
Administration Agent, in his official and
individual capacities; RICK FLORES,
Secret Service Agent, in his official and
individual capacities; ALFREDO
YBARRA, Denver Police Officer, in his
official and individual capacities;
ROBERT ROCK, Denver Police Officer,
in his official and individual capacities;
MARK DALVIT, Denver Police Officer,
in his official and individual capacities;
ROBERT FREUND, Denver Police
Officer, in his official and individual
capacities; KELLY OHU, Denver Police
Officer, in her official and individual
capacities; SHARON HUGHES, Denver

No. 13-1165
(D.C. No. 1:12-CV-00828-RBJ-KLM)
(D. Colo.)

Police Officer, in her official and individual capacities; BRIAN CRAME, Denver Police Officer, in his official and individual capacities; MIKE SCHWARTZ, Denver Police Officer, in his official and individual capacities; MARK BEVERIDGE, Denver Police Officer, in his official and individual capacities; JOSHUA VALERIO, Denver Police Officer, in his official and individual capacities; TROY EDWARDS, Denver Police Officer, in his official and individual capacities; CARRIE MAESTAS, Denver Police Officer, in her official and individual capacities; RUBEN ROJAS, Denver Police Officer, in his official and individual capacities; DAVID IVERSON, Denver Police Officer, in his official and individual capacities; ERIK REIDMULLER, Denver Police Officer, in his official and individual capacities; MATTHEW GRIMSLEY, Denver Police Officer, in his official and individual capacities; MARK SCHONK, Denver Police Officer, in his official and individual capacities; MATTHEW CHURCH, Denver Police Officer, in his official and individual capacities; DAVID SMITH, Denver Police Officer, in his official and individual capacities; KEVIN FRAZER, Denver Police Officer, in his official and individual capacities; BRIAN GORDON, Denver Police Officer, in his official and individual capacities; ANNE MANSFIELD, Denver District Judge, in her official and individual capacities; ANDY SHOPNECK, Denver District Attorney, in his official and individual capacities,

Defendants–Appellees,

- 2 -

and

MATT McQUEEN, Secret Service
Agent, in his official and individual
capacities; RAY WILLIS MANNON,
as agent of Accredited Insurance,
d/b/a Jostee Bail Bonds; DOUGLAS
PRITCHARD, Department of Homeland
Security Agent, in his official and
individual capacities,

        Defendants.

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

---

Douglas Glaser appeals from the district court's dismissal of his pro se civil

rights complaint under Fed. R. Civ. P. 12(b)(6).  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

**I**

Glaser's ninety-seven page complaint, filed on March 30, 2012, named

numerous defendants and asserted nineteen different claims for relief.  He alleged

claims under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, Sixth, Eighth,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and Fourteenth Amendment rights, as well as claims for malicious prosecution, conspiracy, vindictive prosecution, abuse of process, false arrest, false imprisonment, defamation, slander, libel, harassment, and intentional infliction of emotional distress. Glaser sought damages, injunctive relief, and a formal investigation into his allegations. The defendants named in his complaint fell into four groups: (1) the City and County of Denver and twenty-one Denver police officers; (2) the Denver District Attorney and five deputy district attorneys ("Denver DA Defendants"); (3) a Denver District Court judge and an investigator with the Colorado Division of Securities ("CDS"); and (4) federal agents with the Social Security Administration, the Secret Service, and the Department of Homeland Security ("Federal Defendants").[1]

Because this appeal concerns the district court's disposition of a motion to dismiss, we take the following facts from the complaint. See Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013). In 2005, Glaser was running a mergers and acquisitions firm when he learned that CDS was investigating fraud related to a public company in which he was the largest shareholder. On February 20, 2005, Glaser was the victim of a hit and run automobile accident. The police told him they would tow his damaged car to a dealership, but instead impounded it. Denver police officers came to his home that night with a warrant to search for a passport in the

---

[1] The complaint also named a bail bondsman, Ray Willis Mannon, who was not served with the summons and complaint. Additionally, Glaser failed to serve Federal Defendants Matt McQueen and Douglas Pritchard. These defendants are not before the court in this appeal.

name of Michael Douglas Glaser. The officers claimed that Glaser had used this false passport as his identification at the scene of the auto accident, along with proof of insurance and a vehicle registration in his own name. The officers seized items from his home that were beyond the scope of the search warrant. They arrested him and he was released on bond the following day. Four days later, government agents raided Glaser's office with a search warrant seeking the same alleged false passport and other items including financial records, computers, copiers, and fax machines. The agents were from the Denver Police Department, CDS, the Internal Revenue Service, the Secret Service, and the Social Security Administration.

A federal grand jury was convened in March 2005, but it failed to indict Glaser. Throughout that summer, defendants held state grand jury proceedings and subpoenaed information about Glaser's financial accounts and taxes. During this period, the defendants kept his car impounded. They told brokers, business associates, financial institutions, and the employees of businesses Glaser frequented that he was committing fraud. They also threatened Glaser's business associates with prosecution if they continued to do business with him. Defendants made false statements about him to his girlfriend and ex-wife and threatened his personal assistant and his girlfriend with prosecution if they refused to assist in the case against Glaser. They encouraged his landlord to evict him from his office building and dissuaded a prospective employee from working with him. Defendants also monitored his email account and took trash from his residence. Glaser alleges that

defendants took these actions without factual evidence or probable cause to support their allegations.

On August 31, 2005, a Denver grand jury returned a forty-three count indictment against Glaser, alleging violations of the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. §§ 18-17-101 to 18-17-109, conspiracy to commit securities fraud, fraud, theft, and criminal impersonation. Glaser was arrested and bond was set at $750,000. He posted bond and was released, but he was remanded back into custody on September 29, 2005, because he had not satisfied the condition of his bond requiring surrender of the passport in the name of Michael Douglas Glaser. Glaser claimed the U.S. Passport Agency had confirmed that the alleged passport was never issued, and he therefore refused to accept the court's offer to remove this bond condition if he would admit that the passport had existed but was lost or destroyed.

While in jail, Glaser's funds diminished quickly. He informed the Denver District Court that he was trying to sell his home so he could continue to pay his private defense attorney. He alleged that defendants had filed a spurious lien against his home, blocking its sale and forcing him into foreclosure. Years later, after Glaser filed numerous motions regarding the lien, the court ruled that the lien should not have been filed. Because he was unable to sell his home, Glaser could no longer pay his private counsel. That counsel withdrew in April 2006, and the court appointed an attorney. The same month, the Denver District Court dismissed four of the

forty-three counts. At some point, the court also decided to split Glaser's criminal case into three separate trials.

Glaser received documents in discovery showing that defendants had committed perjury in the grand jury proceedings. He sought information from the Colorado Bureau of Investigation regarding records related to the February 2005 auto accident, and his investigation showed that the police officer made no query at that time regarding the name Michael Douglas Glaser, contradicting the officer's grand jury testimony. Glaser's appointed counsel told him this information could result in dismissal of the charges, but the court denied all of his motions.

When Glaser appeared for trial on August 21, 2006, the prosecution indicated it was appealing the dismissal of the four counts, and the case was stayed awaiting the outcome of that appeal. Glaser's counsel filed a motion to dismiss the charges, alleging a speedy trial violation. The Denver District Court granted that motion on February 9, 2007, and dismissed the entire case, but Glaser remained in jail pending a ruling on the prosecution's motion for reconsideration, which the court ultimately granted. Glaser alleges that the court did not reverse its determination regarding the speedy trial violation, but it nonetheless reinstated the case on February 13, 2007. Trial on count forty-three proceeded the next day, resulting in a hung jury and a mistrial.

Glaser learned that his appointed attorney was being investigated in connection with a federal drug indictment. When his attorney committed suicide, the

Denver District Court held there had been a waiver of his speedy trial rights and moved his retrial date to July 2007. Meanwhile, Glaser was pursuing pro se claims for habeas relief in the Colorado Supreme Court and in federal district court, alleging illegal search and seizure, illegal bond condition, grand jury perjury, violation of his speedy trial rights, double jeopardy, and malicious and vindictive prosecution.

On July 18, 2007, Glaser learned that his second appointed counsel was unable to proceed with trial due to mental illness. His trial date was moved to August 20, 2007, and trial proceeded on counts one through nineteen. During the trial, Glaser's counsel had a mental breakdown. The court denied Glaser's request to finish the trial pro se and instead ordered a mistrial. Trial was rescheduled for December 17, 2007, and the state appointed a third attorney.

In September 2007, the court held that the bond condition requiring Glaser to surrender the alleged fictitious passport was unconstitutional. The court removed that condition and lowered his bond to $100,000. But Glaser was unable to post bond, having lost all of his assets, including his home, as a result of the defendants' actions.

On December 17, 2007, the court continued the trial until May 2008, due to the unavailability of a prosecution witness. But the court also set a hearing for January 2008, to address Glaser's claim of a speedy trial violation. The court ruled in his favor, dismissed the charges with prejudice, and ordered Glaser's release. The

prosecution's emergency appeal was unsuccessful, and Glaser was released on March 4, 2008.

After his release, Glaser was continuously followed by Denver and federal agents, and they blocked his attempts to obtain any form of identification. While driving on April 19, 2008, Glaser was stopped by federal agents who allegedly said, "We have him now, he will never get out of jail this time." He had not been drinking, but was arrested for driving under the influence ("DUI") although no breath or blood analysis was conducted. When Glaser filed his complaint in this action, a DUI case remained pending against him in Denver District Court. The federal agents denied that they were following him, but a Denver district attorney later told the court he had directed the federal agents to follow Glaser after the securities fraud case was dismissed.

Glaser attempted to rebuild his business, but defendants continued their harassment. The Denver District Attorney's Office published false information about him online and told his business associates not to work with him. Defendants told potential business associates that Glaser had a lengthy history of fraud and would be going to prison. His business deals fell through. Glaser filed complaints with defendants' agencies, but none of the defendants were reprimanded. Glaser spoke with several attorneys about filing a lawsuit, and he filed a pro se civil rights suit against defendants in 2008. Due to defendants' continued harassment, Glaser moved out of state.

The prosecution appealed the dismissal of the criminal securities fraud charges and the Colorado Court of Appeals reinstated the case against Glaser. He was re-arrested on April 2, 2011, and incarcerated in the Denver County Jail. On January 3, 2012, his trial proceeded in Denver District Court on counts one through nineteen. The Denver District Attorney had dismissed four counts prior to trial—the same four counts that the court had dismissed in 2007. Glaser's motions alleging double jeopardy and a speedy trial violation were summarily denied. The jury found Glaser guilty on eight of the nineteen counts, including securities fraud and a COCCA violation. Glaser alleges that the defendants' investigation demonstrated that he did not commit securities fraud, yet defendants obtained his conviction by withholding exculpatory evidence, offering perjured testimony, and fabricating evidence. At the time he filed the instant complaint, trial on the remaining counts was scheduled for May 2012.

In response to Glaser's complaint, defendants filed motions to dismiss under Rule 12(b)(6). A magistrate judge issued a report and recommendation ("R&R"), recommending dismissal of all nineteen claims. Glaser filed timely objections to the R&R addressing some, but not all, of his claims. The district court adopted the magistrate judge's recommendations in part, and concluded that there were additional bases for dismissal. The court dismissed all claims, some with and some without prejudice, and entered judgment in favor of defendants.

## II

### A

We review de novo a district court's dismissal of a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010). "Courts must evaluate whether the complaint contains enough facts to state a claim to relief that is plausible on its face. We accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." Id. (quotations omitted). "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). "At the same time, we do not believe it is the proper function of the [courts] to assume the role of advocate for the pro se litigant." Id. And "[t]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quotation omitted).

### B

The magistrate judge recommended that fourteen of Glaser's claims be dismissed as barred by Heck v. Humphrey, 512 U.S. 477 (1994), and the district court agreed as to Claims 1, 3, 5-12, and 14. We review de novo a district court's determination that a claim is premature under Heck. See Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 556 (10th Cir. 1999).

- 11 -

In Heck, the Supreme Court affirmed that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." 512 U.S. at 481. Thus, the Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 487. Under the Heck rule, the accrual of a cause of action is deferred until the conviction or sentence has been invalidated. See Wallace v. Kato, 549 U.S. 384, 392-93 (2007). And when Heck applies, the claim is barred as "premature." Beck, 195 F.3d at 556.

**1**

Glaser waived his right to appellate review of the district court's determination that claims 5-7 and 9-12 are barred by Heck because he failed to object to the magistrate judge's recommendation as to those claims. "This circuit has adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate [judge]." Casanova, 595 F.3d at 1123 (quotation omitted). Under this rule, "the failure to make timely objection waives . . . appellate review of both factual and legal questions." Id. (quotation omitted). Moreover, "a party's objections to the magistrate judge's report and recommendation must be . . . specific to preserve an issue for . . . appellate review." United States v. One Parcel of Real Property,

73 F.3d 1057, 1060 (10th Cir. 1996). Although Glaser objected to the magistrate judge's recommendation that Claim 14 was barred by <u>Heck</u>, he seeks to raise an entirely different claim of error on appeal. <u>See</u> <u>Soliz v. Chater</u>, 82 F.3d 373, 375-76 (10th Cir. 1996) (specific appellate arguments not raised in objections to R&R are waived).

"There are two exceptions when the firm waiver rule does not apply," neither of which is demonstrated in this case. <u>Duffield v. Jackson</u>, 545 F.3d 1234, 1237 (10th Cir. 2008). First, as a pro se litigant, Glaser was properly "informed of the time period for objecting and the consequences of failing to object." <u>Id.</u> Second, he has not shown that "the interests of justice require review." <u>Id.</u> (quotation omitted). "Among the factors this court has considered in determining whether to invoke the [interests-of-justice] exception are [1] a pro se litigant's effort to comply, [2] the force and plausibility of the explanation for his failure to comply, and [3] the importance of the issues raised." <u>Casanova</u>, 595 F.3d at 1123 (quotations omitted). These factors do not weigh in Glaser's favor because he filed objections to the magistrate judge's <u>Heck</u> recommendations regarding several of his other claims but has provided no explanation why he did not object at all regarding Claims 5-7 and 9-12, or why he did not make his current claim of error regarding Claim 14. Nor has he shown that the issues he raises are "of considerable import." <u>Id.</u> at 1124

(quotation omitted).[2]  We therefore affirm the district court's dismissal of these claims as premature under Heck.

**2**

Glaser argues that the district court erred in dismissing Claim 1 as barred by Heck.  In this claim, he alleges that the search of his residence and office and the seizure of his property in February 2005 were based on a warrant for which there was no probable cause, in violation of his Fourth and Fourteenth Amendment rights.  He argues that judgment in his favor on this claim would not necessarily imply the invalidity of his conviction or sentence because little to none of the evidence seized was used in his 2012 trial.  We agree that the district court erred in ruling this claim was barred by Heck.  But the district court correctly ruled that the claim is untimely under the applicable statute of limitations.

 "State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims, but federal law governs the time of accrual of § 1983 claims."  Beck, 195 F.3d at 557 (citations omitted).  "[T]he statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued."  Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006); see also Colo. Rev. Stat. § 13-80-102(1)(a), (g).  "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are

---

[2] We also decline to address Glaser's claim in his reply brief that the conviction at issue in Claim 12 has been overturned on appeal.  See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) (declining to review issues raised for the first time in a reply brief).

- 14 -

presumed to have accrued when the actions actually occur[red]."  Beck, 195 F.3d at

558 (quotation omitted).  "While the statute of limitations is an affirmative defense,

when the dates given in the complaint make clear that the right sued upon has been

extinguished, the plaintiff has the burden of establishing a factual basis for tolling the

statute."  Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir.

1980).  Therefore, a statute of limitations question may be appropriately resolved on

a motion to dismiss.  Id.  "We review de novo the dismissal of an action under Rule

12(b)(6) based on the statute of limitations."  Braxton v. Zavaras, 614 F.3d 1156,

1159 (10th Cir. 2010).

Glaser's Claim 1 arose at the time of the search and seizure that, according to

the complaint, occurred in February 2005, more than two years before he filed this

action in 2012.  Nor was the accrual of the statute of limitations deferred under Heck

because "the Heck bar and its concomitant principle of deferred accrual do not apply

to anticipated future convictions."  Garza v. Burnett, 672 F.3d 1217, 1220 (10th Cir.

2012).  Glaser had not yet been convicted at the time of the February 2005 search and

seizure.  Thus, "Heck posed no bar to his claim before he was convicted, and without

deferred accrual, his limitations period began to run on the date of the

unconstitutional search, rendering his complaint untimely."  Id. at 1221.

Glaser contends that he filed previous civil rights lawsuits within the statute of

limitations, which tolled the time period for filing his claim.  The district court took

judicial notice of three actions that Glaser had filed before the present case, two of

which asserted claims related to the February 2005 search and seizure. But Glaser's earliest complaint was not filed until December 28, 2007, already more than two years after his claim accrued. The previous actions were therefore also untimely under the Colorado statute of limitations, and could not toll the limitations period.

In any event, even if Glaser's December 2007 civil rights action had been timely as to the allegations he now asserts in Claim 1, he fails to show that tolling applies under Colorado law. See Fogle, 435 F.3d at 1258 (state tolling rules apply in § 1983 suits). The district court took judicial notice that Glaser's December 2007 action was dismissed without prejudice when he failed to pay the partial filing fee.

> Generally, [under Colorado law,] when a statute does not specifically allow for the tolling of a statute of limitations during the pendency of a prior action, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice as to him.

King v. W.R. Hall Transp. & Storage Co., 641 P.2d 916, 920 (Colo. 1982). The applicable Colorado statute, Colo. Rev. Stat. § 13-80-102, does not specifically allow for tolling during the pendency of a prior action. And Glaser does not identify any other Colorado statute that provides for tolling under these circumstances. Thus, the district court did not err in dismissing Claim 1 as untimely.[3]

---

[3] We do not address Glaser's equitable tolling argument, raised for the first time in his reply brief. See Stump, 211 F.3d at 533.

**3**

Glaser argues that the district court erred in dismissing Claim 2 as untimely. In this claim he alleges that his pre-trial detention beginning on September 29, 2005, violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights because the bond condition requiring him to surrender the fictitious passport in the name of Michael Douglas Glaser was unconstitutional. Claim 2 is barred by the statute of limitations under the same analysis applied to Claim 1.

**4**

Glaser challenges the district court's dismissal of Claim 3 under Heck. He alleges in Claim 3 that he pled guilty to possession of a forged driver's license in Douglas County, Colorado, in March 2002. He further claims that all other charges were dropped and prosecutors agreed they would not be refiled against him pursuant to a plea agreement in that case. According to Glaser, the Douglas County investigation had all the evidence regarding the charges that constitute twenty-three counts of his 2005 indictment in Denver. And he claims that the same evidence was used in the Denver case. He asserts that the filing of these twenty-three counts in Denver subjected him to double jeopardy in violation of the Fifth Amendment and also violated his Fourteenth Amendment right to procedural due process.

Glaser contends that Claim 3 is not barred by Heck because it has nothing to do with any of his convictions. But it is unclear from his complaint which of the forty-three counts in the August 31, 2005, indictment are the twenty-three counts that

- 17 -

he alleges were based on evidence obtained in the 2002 Douglas County case. On appeal, he maintains that all of the twenty-three counts have been dismissed, but in his objections to the R&R he says he was convicted on four of the twenty-three counts and the rest were dismissed.

If Glaser is alleging that his 2012 conviction on four of these counts violates the Fifth and Fourteenth Amendments, that claim is barred by Heck because a judgment in his favor would "necessarily imply the invalidity of his conviction." 512 U.S. at 487. But to the extent he asserts that his 2005 indictment on these claims was itself a constitutional violation, that claim accrued more than two years before he filed his complaint in this action.[4] And, again, Glaser's December 2007 civil rights action did not toll the statute of limitations. As construed, we agree with the district court that Claim 3 is barred in part by Heck and is otherwise untimely.

**5**

Glaser argues that the district court erred in dismissing Claim 4 as barred by the two-year statute of limitations. In this claim, he alleges a violation of his Fifth and Fourteenth Amendment rights as a result of a spurious lien against his residence, which blocked the sale of his home and forced it into foreclosure. He claims that defendants placed the lien against his home on October 14, 2005. The district court noted it was unclear when Glaser became aware of the lien, but that he knew about it

---

[4] Glaser argues that Claim 3 encompasses the defendants' refiling of the same charges multiple times, but the allegations in Claim 3 refer only to the August 31, 2005, indictment in Denver.

no later than April 18, 2006, when the court allowed his private counsel to withdraw because Glaser was unable to pay him.

Glaser argues, once again, that he filed a previous civil rights action that tolled the statute of limitations on this claim. But although Glaser's December 2007 action asserting a spurious lien was timely, that action was dismissed without prejudice. As we have held, under Colorado law a statute of limitations is not tolled during the pendency of an action dismissed without prejudice. See King, 641 P.2d at 920. Glaser therefore fails to show error in the district court's dismissal of Claim 4 as untimely.

**6**

Glaser's Claim 5 alleges malicious prosecution in violation of § 1983. He asserts that he was indicted on August 31, 2005, based on perjured testimony to the grand jury. He also claims that defendants fabricated evidence, withheld exculpatory evidence, violated his right to a speedy trial, and presented perjured testimony in connection with his prosecution. As explained above, Glaser waived his right to appeal the district court's determination that this claim is barred by Heck because he failed to object to the magistrate judge's recommendation. But to the extent that Claim 5 alleges a constitutional violation based on the searches and seizures at his home and office in February 2005, we also affirm the district court's determination that this claim is barred, in relevant part, by the statute of limitations, on the same grounds we articulated regarding Claim 1.

- 19 -

**7**

In Claim 8, Glaser alleges that defendants violated his constitutional rights in various ways before he was indicted in 2005, during his prosecution, and after the charges were dismissed. He does not specify the date of the dismissal in Claim 8, but elsewhere in his complaint he alleges that, as of March 4, 2008, all charges had been dismissed and he was released from custody.

We agree, in part, with the district court's holding that Claim 8 is barred under Heck. To the extent Glaser alleges that defendants deprived him of his right to a speedy and fair trial, committed perjury, and withheld exculpatory evidence in connection with his prosecution, a judgment in his favor on these allegations would necessarily imply the invalidity of his conviction. But Glaser's complaint also alleges that, before he was indicted in 2005, defendants defamed him, destroyed his assets and business, blocked him from obtaining government identification, contacted banks to have him denied credit, and intimidated his friends and business associates. A judgment in Glaser's favor on these allegations would not necessarily imply the invalidity of his conviction. And when this alleged conduct occurred, he had not yet been convicted. Therefore, accrual of these claims was not deferred and they are barred by the two-year statute of limitations. See Garza, 672 F.3d at 1221.

Glaser further alleges that, after the charges were dismissed in 2008, he was followed, harassed, arrested without probable cause, defamed, subject to tortious interference with his business, and blocked from obtaining identification. According

to his allegations, some of this alleged conduct occurred more than two years before he filed this action. Although Glaser does not indicate when or if the conduct ceased, he claims he was arrested again in April 2011. Therefore, it is not clear that all of the defendants' alleged activities fell outside of the statute of limitations. Because these allegations are similar to those Glaser included in Claim 15, we will address this portion of Claim 8 along with our analysis of Claim 15, below.

**8**

In Claim 13, Glaser alleges that defendants arrested him for drunk driving without probable cause in retaliation for filing a civil rights lawsuit against them. The district court construed this claim as referring to his December 2007 civil rights actions because he alleges that the DUI arrest occurred on April 19, 2008. The court concluded that the statute of limitations ran on this retaliation claim two years after Glaser's DUI arrest and the claim was therefore untimely.

Glaser argues that the statute of limitations was tolled by his filing of a previous civil rights action. We assume he is referring to the action he filed on October 20, 2008, in which a final judgment was entered on May 24, 2010. But even if the statute of limitations was tolled while that case was pending, Glaser still waited too long to file Claim 13. After deducting the time between the complaint and the judgment in his October 2008 action, a total of 860 days passed between his retaliatory arrest on April 19, 2008, and the filing of his complaint in this action on

March 30, 2012. We affirm the district court's dismissal of Claim 13 as barred by the two-year statute of limitations.

## C

## 1

In Claim 15, Glaser alleges that defendants tried to destroy his business and defame his name and reputation by informing numerous people and entities that he was committing fraud. He alleges that defendants' false statements caused others to stop doing business with him. Glaser claims that defendants' defamation, libel, slander, and harassment violated his right to procedural due process under the Fourteenth Amendment.

The district court found that Glaser had raised this claim in a civil rights action filed in October 2008. Therefore, the court held that the claim was barred, in part, by the statute of limitations. We agree with that conclusion.

As to the allegations in this claim that may fall within the two-year statute of limitations, the district court held that Glaser's contentions were insufficient to satisfy the requirement that "the complaint contain[] enough facts to state a claim to relief that is plausible on its face." Casanova, 595 F.3d at 1124 (quotation omitted). The court noted that Glaser failed to allege any particulars as to who said or did what, to whom, and when.

"The elements necessary to establish a § 1983 . . . violation will vary with the constitutional provision at issue." Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir.

2013) (quotation omitted). Moreover, liability must be predicated on an individual defendant's personal involvement in the constitutional violation. See id.

> Because § 1983 . . . [is a] vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.

Id. at 1225-26 (citation, quotation, and alteration omitted). In the context of § 1983 claims, which "typically include complex claims against multiple defendants," it is particularly important that a complaint provide sufficient notice to individual government actors to allow them to prepare a defense. Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011) (quotation omitted).

In Claim 15, Glaser makes undifferentiated contentions that "defendants" infringed his rights, without specifying what each of the eleven individual defendants named in this claim specifically did or said. And his allegations that the City and County of Denver implemented an unconstitutional policy to defame his reputation and failed to properly train employees are conclusory.

Glaser does not dispute that the collective allegations in his complaint fail to make clear exactly who is alleged to have done what to whom. But he argues that he needs discovery in order to properly present his claims. We have acknowledged that "[o]ne of the chief concerns of critics [of the plausibility standard] is that plaintiffs

will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence." Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir. 2010). But Glaser admits that he has spoken with his business associates regarding his allegations in Claim 15 and that he has emails regarding some of the allegedly defamatory statements made by some of the defendants. Yet he did not provide specific allegations even with respect to what he admits that he knows. And the district court's dismissal was without prejudice to the extent that Glaser's allegations were timely. See id. at 1186 (dismissal of pro se claim for failure to state a claim is ordinarily without prejudice).

We agree with the district court that Glaser's allegations in Claim 15, to the extent they address conduct within the two-year limitations period, fail to state a claim on which relief can be granted. This conclusion applies as well to allegations in Claim 8 that are not barred by the statute of limitations.

**2**

In Claim 16, Glaser alleges a state law tort claim for intentional infliction of emotional distress. The magistrate judge recommended dismissal of this claim with prejudice because Glaser failed to allege that he had complied with the requirements of the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. §§ 24-10-101 to 24-10-120, specifically the statute's notice provisions. See Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 839 (10th Cir. 2003) (failure to timely file notice of claim against a state entity forever

bars such claim). Glaser argues on appeal that the CGIA does not apply to federal court actions, and that he nonetheless complied with the statutory requirements. But he did not mention Claim 16 in his objections to the magistrate judge's R&R. We therefore hold that he waived appellate review of the district court's ruling on this claim.

**3**

In Claim 17, Glaser alleges that seven named defendants were liable as supervisors for unspecified constitutional violations. He claims the supervisors were made aware of these violations no later than February 2008, but did nothing to discipline their subordinates, stop Glaser's prosecution, or otherwise intervene. He alleges that the supervisors furthered or implicitly condoned the illegal activities. Glaser provides no specifics about what any supervisor did (or did not do) that violated his constitutional rights. He also alleges that the City and County of Denver implemented a policy to allow its employees to destroy citizens' lives and to condone its employees' abuse of power, and failed to train and supervise its employees.

Based on Glaser's assertion that the named supervisors had knowledge of the constitutional violations by February 2008, we agree with the district court that some of the alleged conduct falls outside of the statute of limitations. Moreover, "[t]he same particularized approach" described above requiring a plaintiff to make clear who did what to whom, "applies with full force when a plaintiff proceeds under a theory of supervisory liability." Pahls, 718 F.3d at 1226. Claim 17 includes even

fewer specifics about each supervisor's personal involvement in the unspecified constitutional violations than does Claim 15. And Glaser's allegations regarding the City and County of Denver's unconstitutional policy and failure to train and supervise are equally conclusory. Claim 17 therefore also fails to state a claim on which relief can be granted. On that basis, we hold this claim is subject to dismissal without prejudice to the extent that Glaser alleges conduct falling within the limitations period.

**4**

Glaser seeks injunctive relief in Claim 18 against six named defendants. On appeal, he addresses only the district court's dismissal with prejudice of this claim against Judge Mansfield based on absolute judicial immunity. We review de novo a district court's determination regarding judicial immunity. See Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1153 (10th Cir. 2011).

We infer from Glaser's allegations that Judge Mansfield was the Denver District Court judge who presided in his criminal securities fraud case. Glaser maintains that he is seeking only injunctive relief against Judge Mansfield, rather than monetary damages, and therefore judicial immunity does not apply.[5] "Judicial immunity applies only to personal capacity claims," id. at 1156, but Glaser sued Judge Mansfield in her official capacity as well. And he cites Pulliam v. Allen,

---

[5] Glaser does not challenge the district court's dismissal of Claim 14, in which he sought damages against Judge Mansfield, because she is absolutely immune from claims seeking monetary damages.

- 26 -

466 U.S. 522, 541-42 (1984), for the proposition that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Glaser's contention, however, ignores the text of § 1983. "Although we have previously said that a plaintiff may obtain an injunction against a state judge under 42 U.S.C. § 1983, those statements were abrogated by the Federal Courts Improvement Act of 1996, which provides that 'injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" Knox v. Bland, 632 F.3d 1290, 1292 (10th Cir. 2011) (quoting § 1983) (citations omitted). Because Glaser does not allege that either of these statutory conditions is satisfied, we affirm the district court's dismissal of Claim 18.

**5**

In Claim 19, Glaser seeks a formal investigation into the alleged criminal acts committed against him. The magistrate judge recommended dismissal of this claim with prejudice because the statutes Glaser cites do not provide for a private right of action. The district court adopted that recommendation. Because Glaser did not object to the magistrate judge's recommendation regarding dismissal of this claim, we hold that he waived his right to appellate review. In any event, he also fails to raise any claim of error regarding Claim 19 in his opening appellate brief. See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have

declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

## III

## A

Glaser contends that the district court erred in holding that prosecutorial immunity was an independent basis to dismiss with prejudice claims 2-14 and 16-17 against the Denver DA Defendants.  We review de novo a district court's holding that a defendant is entitled to prosecutorial immunity for his actions.  See Arnold v. McClain, 926 F.2d 963, 967 (10th Cir. 1991).  To determine whether a state prosecutor's actions are shielded from liability under § 1983 by absolute immunity, courts apply "a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (citation and quotations omitted).  Thus, a prosecutor has absolute immunity for his conduct that is "intimately associated with the judicial phase of the criminal process," but he is protected only by qualified immunity for "acts of investigation or administration."  Id. at 270 (quotations omitted).  "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  Id. at 269 (quotation and alteration omitted).

Under the functional approach, a prosecutor's activities related to initiating and pursuing a criminal prosecution and presenting the state's case at trial are absolutely immune from liability.  See id.  A prosecutor's participation in a probable

cause hearing and his presentation of evidence in support of a search warrant are therefore subject to absolute immunity. See id. at 270-71. A prosecutor's statements in the courtroom and in pleadings that are relevant to the subject matter of the proceeding are likewise absolutely immune. See Imbler v. Pachtman, 424 U.S. 409, 426 n.23 (1976). Moreover, an allegation of malice is insufficient to overcome a claim of absolute immunity. See id. at 421-22. Thus, a prosecutor is shielded by absolute immunity from claims that he knowingly used false testimony and suppressed material evidence in a trial. See id. at 413, 431. But when a prosecutor conducts investigative work normally performed by the police, he is not performing a prosecutorial function. See Buckley, 509 U.S. at 273-74. Accordingly, prosecutors in Buckley were not protected by absolute immunity on a claim that they worked alongside police to fabricate evidence against a suspect before there was probable cause to arrest him. See id. at 274-75.

We agree with the district court that some of Glaser's claims are subject to dismissal based on absolute prosecutorial immunity because the Denver DA Defendants' alleged conduct falls within the prosecutorial function of initiating and pursuing a criminal prosecution. This conclusion applies to Claims 3 and 10 (prosecutions in violation of double jeopardy); Claims 5 and 11 (malicious prosecution); Claim 7 (vindictive prosecution); Claim 9 (speedy trial violation); and Claim 14 (constitutional violations at trial). Claims 2, 6, 8, 12-13, and 16, however, include allegations of conduct outside of the prosecutorial function, such as the

- 29 -

fabrication of evidence for the purpose of establishing probable cause, and defamatory statements and harassment outside of the courtroom setting. The Denver DA Defendants have not met their burden to show that this alleged conduct is shielded by absolute immunity. Nor have they met that burden as to Claim 4, which alleges that defendants placed a spurious lien against Glaser's home.[6] Finally, the allegations in Claim 17 are too vague to determine whether the constitutional wrongs alleged by Glaser are all related to the function of initiating and pursuing a criminal prosecution, such that prosecutorial immunity would apply.

**B**

The district court dismissed with prejudice all claims against all of the individual defendants sued in their "official capacities." It reasoned that "[o]fficial capacity means nothing more than that the claims are asserted against the United States or the State of Colorado, as the case may be, and there has been no showing of a waiver of sovereign immunity by either the United States or the State." "Our review of a dismissal based on sovereign immunity is de novo." Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013). Glaser argues that the district court erred in extending Eleventh Amendment immunity to all of the defendants who are not Federal Defendants.

"[S]tate sovereign immunity applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." Steadfast Ins. Co. v.

---

[6] Claims 2, 4, 13, and 16 are nonetheless dismissed with prejudice on other grounds.

Agric. Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007). "[B]ecause an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, the Eleventh Amendment provides immunity when state officials are sued for damages in their official capacity." Peterson, 707 F.3d at 1205 (quotation and alteration omitted). Glaser contends, however, that state sovereign immunity extends only "to states and state entities but not to counties, municipalities, or other local government entities." Steadfast Ins. Co., 507 F.3d at 1253. Of the non-federal defendants, only defendant Rhea Babcock, who is identified in the complaint as a Colorado Division of Securities Investigator, asserts that she is an official of the State of Colorado. Therefore, we affirm the district court's sovereign immunity ruling only as to Babcock and the Federal Defendants.

## C

The district court held that Glaser's allegations asserted under § 1983 failed to state a claim against the Federal Defendants, because he did not allege that the federal employees took action "under color of state law." Wittner v. Banner Health, 720 F.3d 770, 773 (10th Cir. 2013). Glaser, however, argues that he also asserted Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), as a basis for the Federal Defendants' liability on these claims. Therefore, Glaser's claims are not subject to dismissal for failure to allege that the Federal Defendants were state actors.

## IV

We **AFFIRM** the district court's dismissal of all claims against all appellants. Claims 1-2, 4, 13, 16, and 19 should be dismissed with prejudice against all appellants. Claims 14 and 18 against Judge Mansfield and Claims 3, 5, 7, 9-11, and 14 against the Denver DA Defendants should also be dismissed with prejudice. And we affirm the district court's dismissal with prejudice of all official capacity claims against Babcock and the appellants who are Federal Defendants. With these noted exceptions, Claims 3, 5, 8, 15, and 17-18 should be dismissed in part with prejudice and in part without prejudice, and Claims 6-7, 9-12, and 14 should be dismissed without prejudice.

We **REMAND** to the district court for entry of an amended judgment dismissing all claims consistent with this order and judgment. Glaser's motion to proceed on appeal without prepayment of costs and fees is **GRANTED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge